**CONSOLIDATED FREIGHTWAYS, Inc., a Corporation, Appellant,**

v.

**UNITED TRUCK LINES, Inc., a Corporation, Appellee.**

**No. 13890.**

United States Court of Appeals Ninth Circuit.

Oct. 19, 1954.

Rehearing Denied Dec. 6, 1954.

James P. Cronan, Jr., Schafer, Holbrook & Cronan, Portland, Or., for appellant.

Jerome Williams, Cashatt & Williams, Spokane, Wash., for appellee.

Before BONE, ORR and CHAMBERS, Circuit Judges.

BONE, Circuit Judge.

Both parties to this action are Washington corporations and common carriers

of property operating motor trucks which cross state lines. Their operations come under the jurisdiction of the Interstate Commerce Commission by virtue of the provisions of Part 2 of the Interstate Commerce Act, as amended, covering operations of such motor carriers, herein, the Motor Carrier Act, Title 49 U.S.C.A. §§ 301 to 327, inclusive, being Chapter 8 of the present Interstate Commerce Act.

Appellant instituted this action in the lower court seeking only money damages from appellee. Its complaint purported to invoke the jurisdiction of the court "under the general laws relative to actions at law arising under the Constitution and laws of the United States, and particularly under the Interstate Commerce Act, as amended;" and pursuant to the provisions of Section 1337 of Title 28 U.S.C.A.

The facts upon which appellant predicates its claim for relief are that it held a certificate from the Interstate Commerce Commission to transport property over U.S. Highway No. 30; that appellee did not hold such a certificate over U.S. Highway No. 30; that appellee, notwithstanding, had been transporting property over that highway and had thereby diverted traffic and revenues from appellant. The complaint demanded money damages therefor.

Appellee, by a Motion to Dismiss, challenged the jurisdiction of the lower court on the ground that the complaint, upon its face, shows that there is no diversity of citizenship between the parties, and that there is no federal question involved in this litigation. The lower court granted appellee's motion and dismissed the action "for want of federal jurisdiction."

Appellant seeks reversal of the lower court's order of dismissal on either of two theories, posed as follows:

(1) A complaint alleging a violation of the Motor Carrier Act to appellant's monetary damage presents a federal question even though the Act does not specifically provide for such damages, and

(2) The Motor Carrier Act by reserving common law remedies created a federal right cognizable in a district court as a federal question.

These contentions are considered in the order stated.

### Appellant's First Point

As to the first proposition appellant frankly admits that it "can find no case holding that a complaint alleging a violation of the Motor Carrier Act and seeking damages, presents a federal question." It also expresses the belief that "the exact question has never before been raised."

In the complete absence of authority appellant relies upon our opinion in Fratt v. Robinson, 9 Cir., 203 F.2d 627, a case involving a suit for money damages resulting from a violation of Section 10(b) of the Securities Exchange Act, 15 U.S. C.A. § 78j(b). It asserts that the Fratt case is "indistinguishable in principle" from the case at bar, and declares it to be "exactly comparable."

We cannot agree with appellant's view of the effect of the Fratt decision on the issue posed in this case, for we think that the problem in Fratt was quite different from the problem here considered. One of the distinguishable features is that the Fratt case arose under the Securities Exchange Act which contains this provision, 15 U.S.C.A. § 78aa:

"The district courts * * * shall have *exclusive jurisdiction* of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." (Italics ours.)

No claims are here made that appellant's purported cause of action or claim for relief could not be asserted and properly adjudicated in a state court.

Appellant concedes that "except for its reservation of common law remedies, the Federal Motor Carrier Act is silent as to any private remedy for a violation of any of its provisions. All it does is

provide for criminal penalties and injunctive remedies to be sought by the Commission." But appellant argues that "the *expressio unius* rule is no barrier" to assertion of its claim; and referring to our Fratt opinion, it argues that we there held, upon the authority of Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, that a complaint seeking money damages for violation of a federal statute raised a federal question even though the portion of the statute which was alleged to have been violated did not provide for damages for that violation. Pursuing this line of argument, appellant urges us to compare the Securities Exchange Act of 1934 with the Motor Carrier Act, for it contends that in the Fratt case we approved a claim for damages under Section 10(b) of the Securities Exchange Act, although that section provided no right to damages, while other sections of the Act did provide for damages.

In oral argument appellant urged that Part I of the Interstate Commerce Act, the original Act, and Part II of the Interstate Commerce Act, The Motor Carrier Act of 1935, must be regarded as one piece of legislation on the theory that Part II is merely an amendment of Part I and as such necessarily "incorporates", i.e., assimilates, the provisions of Sections 8 and 9 of Part I, 49 U.S.C.A. §§ 8 and 9.[1]

■ We do not agree with the theory advanced in the preceding paragraph. As we have indicated above, Part II makes provision only for criminal penalties and injunctive remedies to be sought by the Commission. In contrast with Part I, Part II is silent as to any private remedy for a violation of any of its provisions. This omission is significant, and persuades us that Part II is to be regarded as a wholly independent legislative enactment in which Congress deliberately elected to provide no remedies for violation of any of its provisions other than those carefully spelled out in Part II itself.

■ Relying on language in the Fratt case, appellant urges that we should not apply the *expressio unius* rule in the case at bar. We think that the rule should be applied. Appellant then points out (by way of analogy) that in similar fashion, the Motor Carrier Act provides for criminal penalties and injunctive remedies, but does not provide a right to damages.

Furthermore, we do not agree with appellant's argument that "the *expressio unius* rule is no barrier here." On the contrary, we think that there was an excellent reason why Judge Clark did not apply this rule in his dissent in the Baird case (Baird v. Franklin) 2 Cir., 141 F.2d 238, to which we referred in our Fratt opinion. That reason is not present in this case. In our Fratt opinion we said, 203 F.2d at page 632:

"Judge Clark disposes of the applicability of the *expressio unius est exclusio alterius* rule, (and we are in agreement with him,) by pointing out that the sections which contain specific rights of action are ' * * * sections (which) deal with special matters only indirectly germane to the regulation of securities exchanges; they provide for more unrestricted recovery than would be possible at common law; and they prescribe narrow statutes of limitation.' "

Appellant also relies on Bell v. Hood, supra. Bell based his right to bring his action in a federal court on a charge resting on a theory that the defendants had tortiously deprived him of *rights*

---

**1.** These two sections of the original Act make any common carrier under that Act liable in damages to the person or persons injured by its violation. They permit an action for recovery of such damages to be brought in any district court of the United States unless the injured party elects to rely for relief on a complaint he may make directly to the Commission. If he resorts to such a complaint to the Commission, he is denied the right to maintain a private suit for damages in the federal courts.

guaranteed by the Fourth and Fifth Amendments.

The basic distinction between the posture of the Bell case and that of the case at bar can be seen in a quote in appellant's brief as follows: "This Court in the Fratt opinion quoted from the Supreme Court's opinion in the Bell case on the Federal question point as follows:

"* * * where federally protected *rights* have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." (Italics ours.)

Obviously, the Bell case was concerned with *rights* guaranteed by the Fourth and Fifth Amendments (although basically these rights were to be protected against invasion by government). In 1893, the Supreme Court said in Monongahela Navigation Co. v. United States, 148 U.S. 312 at page 324, 13 S.Ct. 622 at page 625, 37 L.Ed. 463:

"The first 10 amendments to the constitution, adopted as they were soon after the adoption of the constitution, are in the nature of a bill of rights, and were adopted in order to quiet the apprehension of many that without some such declaration of rights the government would assume, and might be held to possess, the power to trespass upon those rights of persons and property which by the Declaration of Independence were affirmed to be unalienable rights."

It is equally obvious that in the case at bar appellant had no such *protected rights*. It had sought and received from the federal regulatory body a certificate of public convenience and necessity under which authority it was *permitted* to transport property over U.S. Highway No. 30. Without such a certificate appellant could not lawfully operate over this interstate highway as a motor carrier; the Motor Carrier Act and regulations issued pursuant thereto authorize the Interstate Commerce Commission to secure injunctions from federal courts to stop interstate motor truck operations by an operator who does not possess such a certificate. Cf. United Truck Lines, Inc. v. Interstate Commerce Commission, 9 Cir., 189 F.2d 16, certiorari denied 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628.

In the Bell case, 327 U.S. at page 683, 66 S.Ct. at page 776, the court said:

"* * * the alleged violations of the Constitution here are not immaterial but form rather *the sole basis of the relief sought.*" (Italics ours.)

Although appellant in the case at bar charged appellee with a breach of the Interstate Commerce Act by transporting property for compensation in interstate commerce without obtaining from the Commission a "certificate" over the route in question, still it does not clearly appear that the complaint was "drawn so as to claim a right to recover under the Constitution and laws of the United States," or that appellee's alleged violation of the Motor Carrier Act forms the "sole basis of the relief sought." In fact appellant's contentions clearly and bluntly establish that the real basis of its suit is "unfair competition," and that appellee's violation of the Interstate Commerce Act had the legal effect of creating a common law right of action in favor of appellant under a theory of liability discussed in Section 710 of the Restatement of Torts dealing with "Engaging in Business in Violation of Legislative Enactment."

In a Memorandum of Authorities provided for the district court, appellant emphasized that the basis for the recovery sought by it was *a violation of the common law*. There it said:

"The substantive law of this case is bottomed upon the proposition contained in Sec. 710 of the Restatement of Torts (American Law Institute, Vol. 111, 1938):

"'Sec. 710. Engaging in Business in Violation of Legislative Enactment.

"'One who engages in a business or profession in violation of a legislative enactment which prohibits

persons from engaging therein, either absolutely or without a prescribed permission, is subject to liability to another who is engaged in the business or profession in conformity with the enactment, if, but only if,

" ' (a) one of the purposes of the enactment is to protect the other against unauthorized competition, and

" ' (b) the enactment does not negative such liability.'

"A careful study of the Interstate Commerce Act, as amended, including the Motor Carrier Act of 1935, and of the legislative history and administrative and court interpretations of the Act, leaves no doubt that the Act is of the character described in the Restatement proposition."

This memorandum then traced the common law development of this theory from a case in 1706, this to establish its right to recover on the basis of "unfair competition." Absolutely no claim is made of a right to recover based on the statute itself.

It is obvious from the whole setting of the Motor Carrier Act that Congress pre-empted this field of control over the motor carrier type of Interstate Commerce. It is abundantly clear that Congress intended regulatory controls to be exercised by the Commission and not by or through individuals. There is absolutely no indication in this Act or in case law that private suits might be resorted to, to aid the Commission in its enforcement of the Act and the regulations thereunder.

### Appellant's Second Point

As we have indicated, appellant sought to recover in the lower court on a common law cause of action based on the principle announced in Section 710 of the Restatement of Torts. And in this case there was no diversity of citizenship between the parties.

Appellant invokes and specifically relies on certain language appearing in Chapter 1 of the original Interstate Commerce Act,[2] Part 1, 49 U.S.C.A. § 22, which chapter deals only with carriers *other than* motor carriers. This language reads as follows:

" * * * and nothing in this chapter [Chapter 1] contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies; * * *."

The language thus used in Section 22 was obviously intended to apply *only to carriers other than motor carriers.*

A later amendment (1935) to the original Interstate Commerce Act became the Motor Carrier Act with which we are here principally concerned.

Appellant further relies on a certain provision in the Motor Carrier Act, Section 317(b), which carried over into this later Act the various provisions of Section 22 of the older Interstate Commerce Act. This provision, 317(b) reads as follows:

"Provided, That the provisions of sections * * * 22 of this title [49] shall apply to common carriers by motor vehicles subject to this chapter."

Appellant's case thus necessarily rests upon the assumption that the two statutory provisions just above quoted establish its right to maintain in a federal court a cause of action based on common law remedies *for unfair competition,* this because such remedies arise "under an Act of Congress," hence jurisdiction exists under Section 1337, Title 28 U.S.C.A.

A brief reference to Section 22, supra, is in order. That section specifies in great detail various kinds of *restrictions* which may not be imposed on various operational activities of the interstate carriers referred to, and covered by, the terms of Chapter 1 of Part 1 of the original Interstate Commerce Act. The

2. See Chapter 1, Interstate Commerce Act, Part 1, 49 U.S.C.A. §§ 1 to 27, inclusive.

language used in said Section 22 simply and specifically removed any barriers to these particular carriers exercising certain enumerated *privileges* in respect to their business operations, and a reference thereto renders it unnecessary to here restate these particular *privileges*.[3]

 The specific language appearing in the body of the text of Section 22, supra, refers to preservation of *remedies* "now existing at common law or by statute," but appellant does not attempt to rely upon, nor does it cite, any judicial authority indicating resort to, or the application of, orthodox common law remedies against the carriers covered by Chapter 1 of the Interstate Commerce Act in any instance where *unfair competition* between carriers in the securing of business was the basis of a demand for relief. As we have indicated above, appellant makes no such showing, and we are persuaded that none can be made.

Appellant has furnished us with memos in its brief indicating the filing of complaints by various parties against the Pennsylvania Railroad Company (in 1908) in the Court of Common Pleas of Clearfield County, Pennsylvania. Failure or refusal to furnish coal cars, and discrimination and preferences *in this regard* appears to be the gravamen of the charge in the complaints in these state cases. Unfair competition between rail carriers was not involved.

The outcome of the litigation in these state cases is not shown, and in any event Chapter 1 of the Interstate Commerce Act specifically prohibited the above noted practices by a railroad common carrier, and in addition, Sections 8 and 9 of Chapter 1 specifically authorize private suits for damages against a carrier by a person or persons injured by a carrier's violation of the Act. Even though a common law remedy invoked in a state court might have ultimately been judicially held to be available to shippers denied sufficient coal cars, by an interstate rail carrier, it must be pointed out that the *right* to cars directly arose under federal law.

In the case at bar, appellant concedes that no statutory right to a common law remedy for damages for alleged "unfair competition" of a motor carrier is preserved, as is (and was) the *statutory right* of shippers in 1908 to have coal cars provided by a railroad common carrier.

As Judge Solomon said in his oral opinion in the district court, "The fact that the Motor Carrier Act does not abridge or alter the carrier's common law rights does not give plaintiff a right under Federal Law." We agree.

Judgment is affirmed.

---

3. We think that so far as concerns the issues of this case, the effect of the cited language in Section 317(b) of the Motor Carrier Act was to confer on motor carriers the same character of immunities and privileges then enjoyed by rail carriers by virtue of the provisions of Section 22 of the original Interstate Commerce Act.