McFADDIN EXPRESS, INCORPORATED, L & L Leasing Corporation and Louis DeBeradinis, Jr., Plaintiffs-Appellants,

v.

The ADLEY CORPORATION, Michael L. Adley, Donald A. Adley, Ralph J. Adley, Daniel J. Adley, and United States of America, Defendants-Appellees.

No. 351, Docket 30219.

United States Court of Appeals
Second Circuit.

Argued May 4, 1966.

Decided June 21, 1966.

Certiorari Denied Oct. 17, 1966.
See 87 S.Ct. 206.

Tobias Weiss, Stamford, Conn., for plaintiffs-appellants.

Joseph P. Cooney, Hartford, Conn. (Patrick J. Flaherty, Hartford, Conn., of counsel), for defendants-appellees Adley.

Before LUMBARD, Chief Judge, and MOORE and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Plaintiffs, an interstate motor carrier and its stockholders, appeal from a judgment of the District Court for Connecticut dismissing for want of federal jurisdiction their complaint for injuries alleged to have been inflicted by another carrier under a management contract pending an unsuccessful application to the Interstate Commerce Commission for approval of the purchase. The case is a sequel to our decision upholding similar dismissal of a prior complaint, 346 F.2d 424 (2 Cir. 1965); the Supreme Court denied certiorari, 382 U.S. 1026, 86 S.Ct. 643, 15 L.Ed.2d 539 (1966), after having received a memorandum from the Solicitor General submitted in response to the Court's invitation for an expression of the views of the United States. The complaint now before us seeks to raise the question mooted in a footnote to our earlier opinion:

> "3. McFaddin does not suggest that § 5 had been violated, or that its present injuries would be compensable on that theory, and we do not consider the question." 346 F.2d at 426.

Meanwhile McFaddin has protected itself by filing timely suit in a Connecticut court.

The additional claim advanced by the new complaint is that Adley, the defendant carrier, exceeded the temporary authority granted by the Commission under § 210a(b) of the Interstate Commerce Act "to control McFaddin Express, Inc., through management * * * upon the terms and conditions set forth in the agreement filed with the application" by going beyond the agreement and taking action which in practical terms absorbed McFaddin into Adley and destroyed Mc-Faddin as a separate carrier. This, say the plaintiffs, was a violation of § 5(4), and, under what has become familiar doctrine, gives rise to a private claim on their part arising under a law of the United States. See 346 F.2d at 426–427; ALI, Study of the Division of Jurisdiction Between State and Federal Courts 55–58 (Tent. Draft No. 4, 1966).

Although impressive as thus stated, the argument must fail—for a reason not adverted to by the parties. When it enacted the Motor Carrier Act, Chapter 8 and Part II of the Interstate Commerce Act, 49 Stat. 543 (1935), Congress omitted any provisions comparable to §§ 8 and 9 of Chapter 1 which make common carriers subject to that chapter liable for damages for any violation and give injured parties not only the remedy of submitting a complaint to the ICC, see §§ 204(c), 222(b), but that of bringing suit in federal court. A letter from the Legislative Committee of the Commission to the Chairman of the Senate Committee on Interstate and Foreign Commerce in connection with an amendment proposed by the Commission in 1949 demonstrates that the omission was not inadvertent:

"When part II of the act was enacted as the 'Motor Carrier Act, 1935,' it was believed that conditions were not stabilized and that the subjection of motor carriers to liability for damages should be deferred until the difficult initial problems in connection with the new regulation of those carriers had been more clearly worked out."

Hearings before Sen. Comm. on Interstate and Foreign Commerce on S. 1194, 80th Cong., 2d Sess., p. 12.

By contrast the Water Carrier Act, enacted in 1940 as Part III, contained provisions generally conferring a private right of action which were obviously modeled on §§ 8 and 9 of Chapter 1, see §§ 308(b) and (c). In Consolidated Freightways, Inc. v. United Truck Lines, Inc., 216 F.2d 543 (9 Cir. 1954), cert. denied, 349 U.S. 905, 75 S.Ct. 582, 99 L.Ed. 1242 (1955), where the plaintiff sought money damages against a motor carrier for infringing on rights accorded by its certificate, the court invoked *expressio unius* to reject the argument that a private remedy for violating the Motor Carrier Act could be inferred despite the absence of statutory provision; it declared that "Congress intended regulatory controls to be exercised by the Commission and not by or through individuals." 216 F.2d at 547. In subsequent state court litigation, the Supreme Court of Oregon took the same position, 216 Or. 515, 330 P.2d 522 (1958), cert. denied, 359 U.S. 1001, 79 S.Ct. 1136, 3 L.Ed.2d 1029 (1959). A private remedy was also held to be lacking with respect to reparations from motor carriers for unreasonable or discriminatory rates. T. I. M. E. Inc. v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959). In a preliminary phase of Riss & Co. v. Association of American Railroads, 178 F. Supp. 438 (D.D.C.1959), the court relied on the absence of provisions like §§ 8 and 9 in the Motor Carrier Act not only to bar counterclaims for operations by the plaintiff allegedly exceeding its certificate, as in Consolidated Freightways, but also for competitive injury from control alleged to be in violation of § 5 (4).

It can be argued that this holding was in error since a motor carrier's subjection to § 5(4) since 1940 has stemmed not from anything in the Motor Carrier Act but from § 5(13) defining motor carriers as within the term "carrier" as

used in paragraphs (2)–(12) of the section; hence it can be said with verbal accuracy that violation of § 5(4) by a motor carrier is a violation by a "carrier subject to the provisions of this chapter" within the terms of §§ 8 and 9. If the question had arisen before the 1965 amendments to the Motor Carrier Act, 79 Stat. 648, this argument would have been rather easily answered. Initially the provisions requiring I. C. C. approval of acquisitions by a motor carrier were in the Motor Carrier Act itself, § 213, and these, like the provisions with respect to the licensing of operations, § 222(b), were enforceable only by the Commission. See 49 Stat. 555–556, 564. The repeal of old § 213 and inclusion of motor carriers in § 5 were part of the 1940 legislation establishing a National Transportation Policy, 54 Stat. 899, and adopting Part III of the Interstate Commerce Act relating to water carriers. The desire of the draftsman to have a single comprehensive provision relating to consolidation of all three forms of transportation rather than being obliged to frame separate sections for each Part of the Interstate Commerce Act would not suggest any legislative purpose to provide a private remedy for unlawful control by a motor carrier that had previously been withheld. See Sen.Rep. No. 433, 76th Cong., 1st Sess. 28 (1939); H.R.Rep. No. 2016 at 61, and H.R.Rep. No. 2832 at 68, 76th Cong., 3d Sess. 68 (1940). Indeed, in view of the legislative concern over too much competition in the motor carrier industry and the need for effective limitations, see McLean Trucking Co. v. United States, 321 U.S. 67, at 83–84 & n. 17, 64 S.Ct. 370, 88 L.Ed. 544 (1944); American Trucking Ass'ns v. United States, 344 U.S. 298, 312–313, 73 S.Ct. 307, 97 L. Ed. 337 (1953); Historical Development of Transport Coordination and Integration in the United States, ICC Bureau of Transport Economics and Statistics, Statement No. 5015, at 92–95 (1950), quoted in Auerbach & Nathanson, Federal Regulation of Transportation 26–28 (1953), it would have been a strange reading to say that by the 1940 amendment Congress provided a private right of action for unlawful combination although it refused in 1949 and again in 1957, see T. I. M. E. Inc., supra, 359 U.S. at 471–473, 79 S.Ct. 904, to provide one against unlicensed operation or to give shippers by motor carrier a cause of action for unreasonable or discriminatory rates.

■ Today, however, the question is considerably closer. By the Act of September 6, 1965, 79 Stat. 648, effective ninety days thereafter,[1] Congress amended § 204a to grant a right to reparation for unreasonable or discriminatory charges by motor carriers, and added a new section, 222(b) (2), giving a private right of action to enjoin "clear and patent violation" of the licensing requirements. See 1965 U.S.Code Cong. & Ad.News pp. 2923, 2930–2931. The argument as to the absurdity of reading § 5(13) as conferring a private right of action against a motor carrier for violation of § 5(4) when no such right existed for even more consequential provisions thus loses part of its force; now, it can be said with some plausibility, the tables are turned and it would be strange that § 5(4) should be enforceable against a motor carrier only by the Commission when private rights of action exist in respect of rates and, in some degree, unlicensed operation. On the other hand, if, as we think clear, no private right of action for violation of § 5(4) by a motor carrier existed prior to 1965, we ought not to assume a desire to change this in the absence of some indication of Congressional intent, and neither the language of the 1965 amendment nor the legislative history affords this. The Commission and the committee reports justified the reparations amendment as correcting what was thought to be an erroneous

---

1. Although the complaint here was filed on July 26, 1965, and judgment of dismissal was entered November 2, we deem it best to consider the case on the basis of existing law.

decision in the T. I. M. E. case, and as avoiding the added complexities introduced by Hewitt-Robbins, Inc. v. Eastern Freight-Ways, Inc., 371 U.S. 84, 83 S.Ct. 157, 9 L.Ed.2d 142 (1962), see 1965 U.S. Code Cong. & Ad.News, supra, 2931, 2936–2939; the private action for unlicensed operations was "to afford injured parties a measure of self-protection against operations which are openly and obviously unlawful." The committees emphasized the limited character of the latter grant; "the words 'clear and patent' * * * are intended as a standard of jurisdiction rather than a measure of the required burden of proof." See 1965 U.S.Code Cong. & Ad.News, pp. 2931, 2943. But Congress still declined to place in the Motor Carrier Act any provisions like §§ 8 and 9 or 308(b) and (c), generally giving a private right of action. With the legislature so cautious in granting a limited private right of action against an admitted evil, it is hard to conclude that Congress meant to bestow an unlimited one in a complex and debatable area as to which there had been no complaint. Pending further explication of legislative purpose, it thus seems best to continue to read §§ 8 and 9 in a manner which accords equally well with the language, namely, that these sections concern only violations of Chapter 1 by carriers generally subject to its provisions, to wit, those, primarily railroads, to which § 1(1) says "[t]he provisions of this chapter shall apply." Hence, in the absence of provision in Title II, no private right of action against a motor carrier for violation of § 5(4) exists.

■■■■ All that remains of the additional claim now pleaded is that Adley violated the management contract. Nothing in the complaint indicates that determination whether it breached this agreement will require construction of the Interstate Commerce Act. Contrast Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Although, as recognized in our prior opinion, there is doubtless a federal policy "that a carrier authorized to ex-

ercise temporary control will use this permission in accordance with its agreement, so as to enable the controlled carrier to resume independent operation if approval under § 5 is ultimately denied," 346 F.2d at 426, the infusing of the agreement with this policy is not enough, standing alone, to cause an action for breach of the contract to constitute a federal claim. See Pan American Petroleum Corp. v. Superior Court, 366 U.S. 656, 663–664, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961). The contrary result in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972 (1957), rested not merely on the federal interest in collective bargaining agreements in interstate commerce but upon the jurisdictional grant in § 301(a) of the Labor Management Relations Act of 1947, 61 Stat. 156. See 353 U.S. at 450–452, 77 S.Ct. 912. Here not only is there no analogue in the Motor Carrier Act to § 301(a) but, on our reading, Congress withheld a private remedy for violation of the statute itself. It would thus be highly unlikely that Congress meant that acts by an acquiring motor carrier toward the carrier to be acquired, allegedly in excess of its contract rights, should give rise to a claim under the laws of the United States, 28 U.S.C. § 1331, or "under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies," 28 U.S.C. § 1337.

Affirmed.

LUMBARD, Chief Judge (concurring).

I concur in the result.

I think the approach of the majority, holding that there can never be any private cause of action for violation by a motor carrier of Section 5 of the Interstate Commerce Act, 49 U.S.C. § 5, is overly broad and contrary to sound principles of statutory interpretation. I think dismissal is appropriate, however, because in this case the ICC granted an exemption from § 5 pursuant to § 310a; interpreting the complaint, therefore, as alleging a violation of the limited author-

ity granted by such approval, I do not find any statutory private right of action for such a suit.

Congress explicitly gave a private party a right of action in §§ 8 and 9 for violations of § 5 by carriers regulated by that section. Under § 5(13) such carriers include motor carriers as well as railroads and water carriers. Strong reasons should exist before a court refuses to exercise jurisdiction granted to it. A possible inadvertence in conferring the power should not be considered sufficient reason to ignore the plain meaning of the statute unless it is in clear conflict with other, more transcendent, Congressional policies.

Even before the recent amendments to the Motor Carrier Act it could have been argued that the refusal to grant a private right of action for unlawful operation in excess of a certificate, where the injury is to other regulated carriers and in which the Commission's interest is strong, did not conflict with granting a private remedy for unlawful combination, where the injury may be to minority stockholders. In light of the Act of September 6, 1965, 79 Stat. 648, creating a limited remedy for operation without a certificate, there remains no basis for finding that the application of §§ 8 and 9 to violations of § 5 by a motor carrier is sufficiently "incongruous" with the Motor Carrier Act to warrant ignoring the statutory grant of a right of action. I think a district court has jurisdiction to hear a private party claim that he has been injured by an unlawful combination.

But in this case the ICC granted temporary approval to the combination under § 310a. McFaddin asserts that the immunity which that creates is lost because Adley exceeded the control authorized by the Commission due to its violation of the management contract. But § 5 is not a forfeiture provision to enforce compliance with the details of orders under § 310a, as plaintiff seems to suggest; it expresses a substantive policy against unauthorized increases in effective control by one carrier over another. Once the Commission has authorized temporary control I think it lies with the Commission first to determine whether the alleged operation exceeds the actual control which it contemplated granting. If, upon investigation, it discovers that the control is excessive, it has ample authority to correct the abuse, §§ 5(7), 304(c), or it may find that the additional control is useful and necessary and so approve the practice.

Although an ultimate consequence of any unauthorized increase in control is a violation of § 5, it is apparent that the plaintiff's federal claim must turn upon whether the defendant's actions violated the Commission's order under § 310a. There is, however, no statutory basis for a private right of action in the courts for a violation of orders under § 310a; and in light of the Commission's paramount concern with the scope of control exercised in such a situation and its wide range of discretion I do not think any should be implied.

I therefore concur in the dismissal for want of federal jurisdiction.