456 F.2d 890
 Elizabeth CHAVEZ et al., Appellants,
v.
FRESHPICT FOODS, INC., et al., Appellees.
Leonel SANCHEZ et al., Appellants,
v.
GREAT WESTERN EMPLOYMENT AGENCY, INC., Appellees.
Carlos OLGUIN et al., Appellants,
v.
FRESHPICT FOODS, INC., and Imperial Valley Farmers
Association, Appellees.
 Nos. 71-1177, 71-1286, 71-1300.
 United States Court of Appeals,
Tenth Circuit.
 March 13, 1972.
Rehearing Denied April 10, 1972.
 
 Mary J. Allen, Boulder, Colo. (Jonathon B. Chase and Guy T. Saperstein, Boulder, Colo., Albert G. Davis and Arthur R. Smith, Jr., Pueblo, Colo., on the brief), for appellants in No. 71-1177.
 William C. McClearn, Denver, Colo. (David G. Palmer, Denver, Colo., on the brief), for Freshpict Foods, Inc. and Great Western Sugar Company, appellees in No. 71-1177.
 William P. Waggener, Denver, Colo. (Dale P. Tursi, Pueblo, Colo., John B. Smith, George W. Woodard, Alamosa, Colo., William R. Bartlett, Monte Vista, Colo., on the brief), for Lee A. Consaul Co., Inc., Hayashido Farms, Canon Potatoe Co., Fallis Potatoe Co., Russell Dionisio, Charles Dionisio, Jack Dionisio, Dionisio Brothers Produce, Tony Zinno, Zinno's Produce, Jasper Giadone, and Fidel DeGrado, appellees in No. 71-1177.
 Rexford L. Mitchell, Rocky Ford, Colo., for David Nava, Alejandro Martinez Harada Farms, and Truman Lusk, appellees in No. 71-1177.
 Alden T. Hill, Fort Collins, Colo. (Alden V. Hill, Fort Collins, Colo., on the brief), for Dreher Pickle Co., appellee in No. 71-1177.
 Alan M. Grossman, Denver, Colo., for Mizokami Bros. Produce, appellee in No. 71-1177.
 Mary J. Allen, Boulder, Colo. (Guy T. Saperstein, Boulder, Colo., on the brief), for appellants in Nos. 71-1286 and 71-1300.
 William C. McClearn, Denver, Colo. (David G. Palmer, Denver, Colo., on the brief), for appellees in Nos. 71-1286 and 71-1300.
 Before LEWIS, Chief Judge, and HOLLOWAY and BARRETT, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 Civil actions 71-1177, 71-1286 and 71-1300 were filed separately in the District Court. They involve different parties and different factual allegations. The Court granted the appellees' motions to dismiss in each case. This court ordered that the cases be consolidated for appeal as each case involves the issue as to whether a private right of action will be implied from a federal regulatory statute.
 
 Civil No. 71-1177
 
 2
 In No. 71-1177, Chavez, et al. v. Freshpict Foods, et al., sixteen domestic workers from Colorado and Texas filed suit on behalf of themselves and others similarly situated in 26 Colorado counties. They allege that the appellees, 34 employers of agricultural workers, employ Mexican nationals who have illegally entered the United States. As a result, appellants allege that they have been deprived of work and that their wages have been depressed. Appellants contend that the knowing concealment and employment of illegal aliens violates sections of the Immigration and Nationality Act, i. e., 8 U.S.C.A. Secs. 1101(a) (15) (H) (ii), 1182(a) (14), 1324, 1325, 20 C.F.R. Secs. 602.10-602.10b and 29 C.F.R. Secs. 60.1-60.6. They further alleged that employment contracts between the appellees and illegal aliens are against public policy and illegal. The domestic workers seek actual and exemplary damages as well as injunctive and declaratory relief.
 
 
 3
 The trial court dismissed the appellants' complaint with prejudice, 322 F.Supp. 146. It held that no private action for enforcement of the immigration laws was intended, either expressly or by implication.
 
 
 4
 The appellants contend that: (1) 8 U.S.C.A. Secs. 1101(a) (15) (H) (ii),[1] 1182(a) (14),[2] 1324[3] and 1325[4] give them a private right of action to redress injury which results from violation of the statutes; (2) the existence of a statutory scheme of federal regulation does not preclude the implication of private remedies; (3) a private remedy exists under 8 U.S.C.A. Secs. 1182(a) (14), 1324(a) (3) and 1325 (1964); (4) appellees have incurred liability to appellants by aiding and abetting in violation of 8 U.S.C.A. Secs. 1182(a) (14) and 1325 (1964); (5) the employment proviso of 8 U.S.C.A. Sec. 1324(a) (1964) does not indicate congressional intent to deny private remedies for the injuries appellants allege; and (6) employment contracts between appellees and illegal aliens in violation of Secs. 1182(a) (14) and 1325 (1964) are illegal and their performance may be enjoined.
 
 
 5
 The appellants contend that the test is to look to the overall purpose of the legislation in determining if the implication of a private remedy would be consistent with its purpose. They argue that a private remedy is consistent with the purpose of the Immigration and Nationality Act, hereinafter called the Act, and that it should therefore be implied by this court. J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Texas & Pacific Railway Company v. Rigsby, 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916); Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir. 1969); Fitzgerald v. Pan American World Airways, 229 F.2d 499 (2nd Cir. 1956).
 
 
 6
 These decisions are inapposite. In Borak the Securities Exchange Act of 1934 contains express evidence that Congress intended private enforcement. In Fitzgerald the Court found a compelling federal interest dictating its reason for implementing civil remedies. There is no such compelling reason here. In Gomez, supra, the Court implied a civil remedy because there was no other available remedy, either administrative, criminal or civil. The Rigsby case has been changed by more recent cases which have held that tort actions under the Federal Safety Appliances Act do not state a federal question.
 
 
 7
 The appellants contend that the Department of Justice and other governmental agencies which are required to enforce the federal immigration laws are "grossly inadequate" and that this court should enforce the Act. Accordingly, they seek to by-pass the enforcement procedures set forth in the Act. In order to accommodate them, this court must "fashion" or create a private right of action and a private remedy even though Congress has revealed no intention to do so under the immigration laws. This we decline to do. T.I.M.E., Incorporated v. United States, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959); Nashville Milk Co. v. Carnation Company, 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958); Oppenheim v. Sterling, 368 F.2d 516 (10th Cir. 1966), cert. denied 386 U. S. 1011, 87 S.Ct. 1357, 18 L.Ed.2d 441 (1967); Consolidated Freightways v. United Truck Lines, 216 F.2d 543 (9th Cir. 1954), cert. denied 349 U.S. 905, 75 S.Ct. 582, 99 L.Ed. 1242 (1955).
 
 
 8
 The appellants allege that four sections out of the Act entitle them to bring a private cause of action. The segments selected by the appellants demonstrate that private enforcement was not intended. 8 U.S.C.A. Sec. 1101(a) (15) (H) (ii) is part of a definitional section which defines nonimmigrant aliens; it cannot be construed so as to create private rights. 8 U.S.C.A. Sec. 1182(a) (14) contemplates administrative action by the Secretary of Labor. Nothing therein expresses a grant of private cause of action based upon its violation. 8 U.S.C.A. Secs. 1324 and 1325 are penal sanctions to be applied against employers who harbor illegal aliens. Employment is not deemed to constitute harboring. 8 U.S.C.A. Sec. 1324(a) (4). No intent to confer civil liabilities for their violation is expressed.
 
 
 9
 At the present time there is a resolution before Congress directed toward the exact practices which are complained of by the appellants in this suit. House Resolution 2328. Since the remedy appellants seek here is properly under Congressional consideration, this court will not usurp the lawmaking power of Congress by judicially implying the remedy sought by the Resolution. There is no indication that Congress intended to create a private cause of action under the Act.
 
 Civil Actions 71-1286, 71-1300
 
 10
 In Civil No. 71-1286, Sanchez, et al. v. Great Western Employment Agency, Inc., and Civil No. 71-1300, Olguin, et al. v. Freshpict Foods, Inc. and Imperial Valley Farmers Association, the appellants, migrant farmworkers seek damages for violation of the Farm Labor Contractor Registration Act of 1963, 7 U.S.C.A. Secs. 2041-2053 (Supp.1970), alleging breach of contract, and violation of Colo.Rev.Stat. Secs. 80-11-4, 80-11-7 (1963). In Sanchez, the appellants further allege negligent misrepresentation. In both cases appellants contend that the appellees induced them to come to Colorado by misrepresenting the amount of wages to be paid, the conditions of housing to be provided, and the conditions for return transportation all in violation of 7 U.S.C.A. Secs. 2044(b)[5] and 2045(b).[6]
 
 
 11
 The District Court held that the complaints failed to state sufficient facts to constitute causes of action, in that no federally protected right is involved.
 
 
 12
 The appellants urge that: (1) the Farm Labor Registration Act, hereinafter called the Act, confers on migrant farmworkers, injured by violations of the Act, a private cause of action in federal court for damages; (2) the existence of a statutory scheme does not preclude the implication of private remedies; and (3) the existence of state court remedies for breach of contract and tort injuries does not preclude the implication of private remedies for requisite federal district court jurisdiction.
 
 
 13
 The appellants urge the same rule for implication of private rights and remedies fashioned in Chavez and cite the same cases. That argument will be incorporated here.
 
 
 14
 The appellants contend that the Act's authorization to the Secretary of Labor to investigate complaints does not preclude judicial implication of private remedies. They argue that the remedies prescribed in the Act are not intended to be exclusive.
 
 
 15
 The legislative history of the Act does not indicate that Congress intended to imply civil remedies. Congress expressly vested the Secretary of Labor with the authority to enforce the Act. Its sanctions are penal in nature. In the absence of congressional intent to the contrary, we hold that the penal sanctions in the Act are exclusive. T.I.M.E., Incorporated v. United States, supra; Nashville Milk Co. v. Carnation Company, supra; Oppenheim v. Sterling, supra; Consolidated Freightways v. United Truck Lines, supra.
 
 
 16
 This court will not fashion civil remedies from federal regulatory statutes except where a compelling federal interest of a governmental nature exists or where the intent of Congress to create private rights can be found in the statute or in its legislative history. Had the Congress intended to create private causes of action and private remedies, it was fully capable of directly and clearly so providing. McCord v. Dixie Aviation Corporation, 450 F.2d 1129 (10th Cir. 1971); Rogers v. Ray Gardner Flying Service, Inc., 435 F.2d 1389 (5th Cir. 1970), cert. denied 401 U.S. 1010, 91 S.Ct. 1255, 28 L.Ed.2d 546 (1971); Rosdail v. Western Aviation, Inc., 297 F.Supp. 681 (D.Colo.1969).
 
 
 17
 The appellants acknowledge that state court remedies are available to them under Colorado law. They argue, however, that those remedies do not preclude the implication of private causes and remedies under the federal Act in that the Act imposes new liabilities not cognizable at state common law. The appellants have a private cause of action for damages under Colo.Rev.Stat. Secs. 80-11-4 and 80-11-7 (1963).
 
 
 18
 In McCord v. Dixie Aviation Corporation, supra, we declined to imply a private civil remedy pursuant to the Federal Aviation Program which would have required imputation of the negligence of the duly licensed pilot to the owner and fixed base operator of the rented airplane who were not charged with active negligence. We there observed that the appellants had failed to show that any compelling federal interest existed; that United States District Courts are courts of limited jurisdiction; and that to imply the civil remedy urged would constitute abusive judicial law-making.
 
 
 19
 Bank of America National Trust & Savings Association v. Parnell, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956), was a diversity suit involving private litigants. The United States Government was not a party. The primary issue involved the good faith cashing of Home Owner Corporation bonds guaranteed by the United States, without knowledge or notice of the defect in title. That issue did not touch the rights and duties of the United States. Accordingly, the Court found no justification for application of federal "common law" and remanded for a determination under the laws of Pennsylvania.
 
 
 20
 The Court in the Parnell case distinguished Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), which held that in the absence of an applicable Act of Congress, it is for the federal courts to fashion and create a governing rule of federal law in lieu of application of state law where the rights and duties of the United States involved in its issuance of commercial paper demand national uniformity. In the cases at bar, as in McCord, supra, there is no demonstration of a compelling federal interest involving the rights and duties of the United States as distinguished from rights and duties of private litigants justifying judicial law-making.
 
 Conclusion
 
 21
 We recognize that the tripartite classification of governmental powers-legislative, executive and judicial-has no absolutes, and that governmental functions are not easily defined as "legislative", "executive" or "judicial". But in the cases at bar the substantive rights relied upon by the appellants have been promulgated by Congress in the exercise of its power to enact penal statutes. In effect, appellants urge this court, under its classical adjudicative power, to legislate. When Congress was dealing with the subject matter of the statutes here involved, it was capable of clearly and directly providing the rights and remedies urged by the appellants. Furthermore, in the Chavez case we have observed that a Resolution is presently before Congress, directed toward the same practices which the appellants are complaining of here. We are dealing with a political question beyond the jurisdiction of the courts to determine with the "potentiality of embarrassment from multifarious pronouncements by various departments on one question". Baker v. Carr, 369 U.S. 186 at 217, 82 S.Ct. 691 at 710, 7 L.Ed.2d 663 (1962).
 
 
 22
 We affirm.
 
 
 23
 HOLLOWAY, Circuit Judge (concurring and dissenting):
 
 
 24
 In No. 71-1177, I concur in the result. In Nos. 71-1286 and 71-1300, I respectfully dissent.
 
 
 25
 In the Chavez appeal, No. 71-1177, it does not appear to me that there are particular wrongs proscribed by the immigration statute, allegedly done by these defendants and sufficiently connected to these particular plaintiffs, for implication of private rights of action. However, in the Sanchez and Olguin appeals, Nos. 71-1286 and 71-1300, we deal with a federal regulatory statute with penalties and creating "Obligations and prohibitions" specifically requiring disclosures by persons defined in the Act, such as these defendants allegedly are, to a particular identifiable group, such as these plaintiffs. In these circumstances I believe that private rights of action should be implied to carry out the statutory policy. See Wyandotte Transp. Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407; J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423; Gilbert v. Nixon, 429 F.2d 348, 355 (10th Cir.), and cases there cited; and Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir.). Therefore, in the latter appeals I cannot agree that the complaints fail to state a claim for relief.
 
 
 
 [1]
 Sec. 1101(a) (15) provides:
 The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens-
 (H) an alien having a residence in a foreign country which he has no intention of abandoning * * * (ii) who is coming temporarily to the United States to perform temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country.
 
 
 [2]
 Sec. 1182(a) provides:
 Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
 (14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and to the Attorney General that (A) there are not sufficient workers in the United States who are able, willing, qualified, and available at the time of application for a visa and admission to the United States and at the place to which the alien is destined to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed.
 
 
 [3]
 Sec. 1324(a) provides:
 Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who-
 (3) willfully or knowingly conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, in any place, including any building or any means of transportation-
 any alien, including an alien crewman, not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States under the terms of this chapter or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2,000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs: Provided, however, That for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring.
 
 
 [4]
 Sec. 1325 provides:
 Any alien who (1) enters the United States at any time or place other than as designated by immigration officers, or (2) eludes examination or inspection by immigration officers, or (3) obtains entry to the United States by a willfully false or misleading representation or the willful concealment of a material fact, shall, for the first commission of any such offenses, be guilty of a misdemeanor and upon conviction thereof be punished by imprisonment for not more than six months, or by a fine of not more than $500, or by both, and for a subsequent commission of any such conviction thereof shall be punished by imprisonment for not more than two years, or by a fine of not more than $1,000, or both.
 
 
 [5]
 Sec. 2044(b) provides:
 Upon notice and hearing in accordance with regulations prescribed by him, the Secretary may refuse to issue, and may suspend, revoke, or refuse to renew a certificate of registration to any farm labor contractor if he finds that such contractor-
 (2) knowingly has given false or misleading information to migrant workers concerning the terms, conditions, or existence of agricultural employment;
 (4) has failed, without justification, to comply with the terms of any working arrangements he has made with migrant workers.
 
 
 [6]
 Sec. 2045 provides:
 Every farm labor contractor shall-
 (b) ascertain and disclose to each worker at the time the worker is recruited the following information to the best of his knowledge and belief: (1) the area of employment, (2) the crops and operations on which he may be employed, (3) the transportation, housing, and insurance to be provided him, (4) the wage rates to be paid him, and (5) the charges to be made by the contractor for his services.