**VE–RI–TAS, INC. and Pat Walker's of Colorado, Inc., Plaintiffs,**

v.

**ADVERTISING REVIEW COUNCIL OF METROPOLITAN DENVER, INC., et al., Defendants.**

**Civ. A. No. 74–M–625.**

United States District Court, D. Colorado.

April 7, 1976.

Harrison W. Hertzberg, Los Angeles, Cal., and Gretchen VanderWerf of Ireland, Stapleton, Pryor & Holmes, P. C., Denver, Colo., for plaintiffs.

John D. Phillips, Jr., and Thomas B. Kelley, of Yegge, Hall & Evans, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

MATSCH, District Judge.

This action was commenced by the filing of a complaint on July 17, 1974. An amended complaint was filed September 30, 1974. The parties engaged in extensive discovery and upon the facts developed, both plaintiffs and defendants have filed cross motions for summary judgment upon which a hearing was held. The issues are now presented for final disposition.

## THE PARTIES

Ve-ri-tas, Inc. is a California corporation doing business under the fictitious name and style of Pat Walker's Int'l. Figure Perfection Salons. Its principal place of business is in Los Angeles, California and it also has an office in Houston, Texas. The plaintiff Pat Walker's of Colorado, Inc., is a Colorado corporation which did business in Englewood, Colorado operating a figure perfection salon until October 29, 1974.

Rocky Mountain Better Business Bureau (BBB) is a private, non-profit corporation organized under Colorado law. Its activities are funded by dues from its members, public donations and sales of literature to its members and to the public. BBB received no financial aid or assistance from the State of Colorado and its members include more than 800 business enterprises and approximately 100 consumers.

Advertising Club of Denver (Ad Club) is a non-profit Colorado corporation with members who are advertising agencies and persons engaged in the advertising business.

Advertising Review Council of Metropolitan Denver, Inc. (Ad Council) is a Colorado non-profit corporation which was organized to create and maintain the Advertising Review Board of Metropolitan Denver (ARB). The individual defendants Bell, Cook, Gart, Brown, Jordan, Broyles, Massey and Yates are all directors of the Ad Council. Defendant Bell is also general manager and a director of BBB.

The defendant Hill is chairman of ARB which consists of thirty members who are available to serve on five member panels for the purpose of considering the truth and accuracy of specific advertising claims. The other individual defendants are the members of the panel concerned with Pat Walker's advertising. The composition of the ARB is to be forty per cent local advertisers, thirty per cent local advertising agencies and thirty per cent local public members and that same relationship is to be maintained on the individual panels.

## UNCONTROVERTED FACTS

The essential facts are not in controversy. The business of Ve-ri-tas is the leasing of figure perfection machines and equipment to salons in several states using a standard equipment rental agreement. These rental agreements and arrangements between Ve-ri-tas and the salons bear some resemblance to franchising agreements. For purposes of this case, it is not necessary to define the exact legal relationship between Ve-ri-tas and such businesses.

Pat Walker's of Colorado, Inc. had rental agreements for the use of fifteen of these weight reduction machines. Ve-ri-tas also assisted the salons, including Pat Walker's of Colorado, Inc., by giving counsel and advice with respect to marketing and advertising. Ve-ri-tas provided advertising slicks for use by the Colorado outlet as well as other salons.

Ad Council was incorporated in February, 1974 and a public announcement of its formation was made at a press con-

ference on April 10, 1974, attended by the Colorado Attorney General, the Denver District Attorney, the Colorado Secretary of State and the Director of the Metropolitan District Attorney's Consumer Affairs Office. These officials gave public recognition, praise and verbal support to what they described as an effort at self regulation by the business community.

The stated purpose of the ARB was the achievement of the highest standards of truth and accuracy in advertising through a system of self regulation.

BBB received complaints from the public. The staff of the office of the Colorado Attorney General and the Denver District Attorney also refer citizen complaints to the BBB. The BBB makes an effort to resolve the complaints by negotiation and agreement with the offending advertiser. If the offender is a BBB member, the sanction of expulsion may be used. For purposes of these summary judgment motions, it is assumed that the plaintiff could prove that in practice BBB members are treated differently from non-members with respect to advertising complaints against them.

On June 4, 1974, ARB chairman Hill wrote a letter to Pat Walker's of Colorado, Inc., to advise of the referral from BBB of a complaint regarding Pat Walker's advertising. In that letter the president of Pat Walker's was invited to appear and present testimony and argument before the panel and notice was given that the decision of the panel would be made public and that it would be given to appropriate local and state government agencies.

Plaintiffs' counsel requested all documents relative to ARB procedures, which were given to him before June 24. On that day, plaintiffs' counsel wrote to chairman Hill, raising procedural due process objections and denying that ARB had any jurisdiction to consider any complaints against his clients.

On the morning of June 26, Pat Walker's of Colorado, Inc. received written notice of the specific advertising claims being questioned. On the afternoon of that day, plaintiffs' counsel met with chairman Hill to explain further the procedural due process objections to the procedure which ARB was following.

The panel did meet and conduct a hearing on the evening of June 27. There was no appearance for any one representing Pat Walker's of Colorado, Inc. BBB members attended and presented evidence which resulted in the panel determination that Pat Walker's ads violated the BBB Code of Advertising. These violations included the use of a testimonial made by the wife of the president of Pat Walker's, without disclosure of the fact of that relationship. Claims of the effectiveness of weight reduction through the use of "passive exercise equipment" were also found to be misleading.

The occupations of the panel members in this case are a college teacher, a clerk of the Colorado Senate, the president of an appliance store, the director of a credit bureau and an advertising agency representative.

By a letter dated June 30, 1974, chairman Hill advised Pat Walker's of Colorado, Inc. that the panel meeting had been held and the specific charges and findings made were quoted in that letter. Chairman Hill requested that Pat Walker's cease the use of the offending advertising within a reasonable time and he asked to hear from Pat Walker's within ten days "regarding your 'acceptance, rejection or request for modification or reconsideration of the board's decision' ".

There was no reply to that letter.

On July 16, defendant Hill wrote another letter to Pat Walker's of Colorado, Inc. to advise of ARB's intention to make the matter public and to make the records available to appropriate local or state agencies. In that letter, he also said that if Pat Walker's submitted a concise statement of its view, that statement would be published and released simultaneously with the ARB release.

As previously noted, this litigation began on July 17, 1974 and the plaintiffs

moved for a preliminary injunction against any news release. That motion was denied because it would have been a prior restraint of speech.

On September 12, 1974 chairman Hill held a news conference at which he released a statement that the ARB panel found Pat Walker's advertising to be misleading or unethical. He also submitted this information to the Denver District Attorney and invited his examination of the BBB files.

The Denver District Attorney did file a criminal complaint against Pat Walker's of Colorado, Inc. on October 11, 1974, charging two counts of false and misleading statements in advertising. Such misdemeanors were alleged to have occurred on October 1, 1974 and October 8, 1974. Those charges were never brought to trial.

BBB is a dues paying member of the National Council of Better Business Bureaus. That organization supports and coordinates efforts of local Better Business Bureaus, including participation in the development of advertising review councils.

Upon these facts, the plaintiffs seek an injunction, declaratory relief and money damages under three separate claims for relief. First, it is claimed that the defendants, acting under color of authority, violated the Fourteenth Amendment by infringing upon the plaintiffs' liberty and property rights without due process of law. Second, it is contended that the defendants violated the federal antitrust laws. Third, it is asserted that the defendants have placed an undue burden on interstate commerce. Jurisdiction to consider these claims is alleged to exist under 42 U.S.C. § 1983, 28 U.S.C. § 1343(3) and 1343(4), the Fourteenth Amendment, 15 U.S.C. §§ 15 and 26, and 28 U.S.C. § 1337.

The material facts, disclosed by the extensive discovery record to be uncontroverted, show that the plaintiffs are not entitled to relief under any of these claims and that this civil action should be dismissed.

There can be no involvement of the Fourteenth Amendment and no cause of action under 42 U.S.C. § 1983 if the defendants did not act under color of state law. It is the abuse of governmental authority which generates the right to relief. Because none of the defendants is an agency or official of government, the plaintiffs rely upon that line of authorities which finds the existence of state action where there is a showing of a symbiotic relationship with government. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961), *United States v. Price*, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966), *Gilmore v. City of Montgomery*, 417 U.S. 556, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974).

■ There is no touchstone by which to test the sufficiency of the nexus. The focus of the inquiry is whether the evidence shows that the state has elected to place its power, property and prestige behind the defendants' actions. *Gilmore v. City of Montgomery, supra.*

■ Here the State of Colorado has exercised its police power by proscribing false and misleading statements in advertising with a criminal sanction. 1973 C.R.S. § 18–5–301. Both the Colorado Attorney General and the Denver District Attorney assigned staff members to specialize in consumer protection matters. There has been considerable cooperation between those offices and the defendant corporations with an ongoing interchange of information and cross references of particular complaints. Such contribution to and cooperation with law enforcement is an exercise of constructive citizenship and the plaintiffs' briefs recognize the responsibility to relate information about criminal action to the proper governmental authority. The important involvement in this case is the extent to which state authority is the enforcement mechanism for the standards of ethics and propriety established by the defendants. That, in turn, leads to the question of whether there is any indication of an infringement of constitutionally protected interests.

■ It is now clear that commercial speech is entitled to First Amendment protection. *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975). Accordingly, the plaintiffs had a right to advertise their products and services without a prior restraint or threat of governmental retaliation. Thus, if it were shown that the defendants were calling for some conformity with their notions of proper advertising content and that they had a call upon the power of prosecution to threaten criminal charges to enforce those views, there could be a basis for relief. That is not the case.

■ There is no question but that the BBB code of advertising is a private and unofficial view of what commercial speech ought to be. There is also no question but that the State of Colorado can sanction false and misleading advertising through the criminal process without violating First Amendment freedoms. There is also a large area of coincidence as to what is criminal and what violates the unofficial code. The particular advertising statements involved in this case would seem to be within that area of coincidence.

There is nothing in this record to suggest that in the filing of the criminal complaint against Pat Walker's of Colorado, Inc. the Denver District Attorney's office acted in any way other than by the exercise of independent judgment that the information available, including that provided by the defendants, indicated the violations charged. There is nothing to show that these complaints were coerced by any of the defendants. It is clear that defendant Hill and others sought to energize this prosecutive effort by calling attention to Pat Walker's advertising.

To put this case into proper context, recognition must be given to the defendants' freedom of speech. Those who call public attention to themselves or to their products and services through advertising must expect and anticipate that others will take issue with them. If the constitutional protection is to be given to commercial speech, it must be done with the same open exchange as we have long recognized for the free expression of ideas. What is presented in the record in this case is a well organized effort to use the power of publicity and peer group condemnation to establish a standard of responsibility in commercial communication. There is no imbalance of interests presented here. This kind of clash of claim and counterclaim is, indeed, the engagement of conflicting interests which our constitutional system of ordered liberty is designed to protect. The traditional law of defamation is an adequate inhibition of any excesses attendant upon this type of activity.

The plaintiffs also claim that the color of law requirement is met in this case by a finding that the defendants, most particularly BBB, were performing a function which is public in nature and for which they have a fiduciary responsibility. *Marsh v. Alabama*, 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1946) is cited as authority. There, the Supreme Court found that a private corporation was in the position of government in the operation of a company town. The rationale of that case has now been greatly restricted by the Supreme Court. *Hudgens v. National Labor Relations Board*, 424 U.S. 507, 96 S.Ct. 1029, 47 L.Ed.2d 196, 44 U.S.L.W. 4281 (1976).

There is no substitution of private for public authority in this case. The defendants are seeking to enforce the BBB advertising code. That is not the equivalent of any state statute or local ordinance. Indeed, if the standards set by that code were to be enacted into any law or regulation enforced by governmental action, it would be an infringement of First Amendment freedom. The advertising code can go beyond the limits of governmental action precisely because its enforcement mechanism is nothing more than a call of public attention to the offending conduct.

In summary, I conclude that the evidence reveals that the defendants here were not acting under color of law and, accordingly, there is no basis for relief

under 42 U.S.C. § 1983 or the Fourteenth Amendment.

■ Even if a contrary conclusion were indicated by the evidence, the defendants' actions were consistent with applicable standards of due process. Whether the protected interests of the plaintiffs be considered in terms of the freedom of speech or the property rights involved in their business activities, the limitation of the sanction to adverse publicity could not conceivably call for more protection than that provided here. The criminal charges made against these plaintiffs have not been tried and the record does not disclose any reason for the failure to proceed with prosecution. No criminal sanctions have been imposed. The standard of what process is due for the retaliatory actions of the defendants is not to be confused with that required for criminal prosecution. Here the plaintiffs were given an opportunity to participate in a hearing and they were given an opportunity to participate in the formulation of a public statement about the findings of the panel. Where, as here, the plaintiffs have made no effort to use the process available to them, they can hardly be claiming to be injured because not more was available.

■ The second claim for relief is for private enforcement of prohibited antitrust activities. Under Section 4 of the Clayton Act, there can be private redress for such public wrongs if damage is shown. Here, the plaintiffs contend that there is a per se violation of Section 1 of the Sherman Act and an apparent attempt to monopolize in violation of Section 2 of that Act. More specifically, the plaintiffs contend that these defendants are engaged in a conspiracy among themselves and with the Council of Better Business Bureaus to restrain trade and commerce in the weight loss business within the greater Denver metropolitan area and to exclude non-members of BBB from those markets. The claimed effect is the destruction of the business of Pat Walker's of Colorado, Inc. and an impairment of the business

of Ve-ri-tas. Plaintiffs seek to bring their Section 1 charge within *Fashion Originators Guild v. Federal Trade Commission*, 312 U.S. 457, 61 S.Ct. 703, 85 L.Ed. 949 (1941) where an association of dress manufacturers sought to combat style piracy by boycotting retailers who sold garments copied by non-guild manufacturers. That was held to be a group boycott which was a *per se* violation of Section 1 of the Sherman Act.

A comparable kind of violation was found in *Radiant Burners, Inc. v. Peoples Gas, Light & Coke Co.*, 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961). That involved a refusal to supply gas to consumers upon the basis of an alleged failure to comply with association standards of safety.

■ The obvious distinction between *Fashion Guild, Radiant Burners* and the present case is that here there is no refusal to deal and no concerted effort or attempt to boycott or to cause others to refuse to deal with the plaintiffs.

The plaintiffs have called attention to an FTC advisory memorandum refusing requested approval of an advertising review activity of the Better Business Bureau Pulaski County, Little Rock, Arkansas which was somewhat comparable to that involved in this case. The difference provides the distinction because the Pulaski County action involved an effort to persuade all advertising media to refuse to accept the offending material. No such effort is involved in what the defendants did here. If the antitrust laws were to be read so broadly as to preclude fair comment on the content of advertising material, they would infringe upon the defendants' First Amendment freedom. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

Nothing in this record suggests any intent to monopolize by excluding the plaintiffs from the Denver market. Indeed, none of the defendants appears to

be in competition with the plaintiffs in the weight loss market. It is too much to say that every sporting goods store is in competition with weight reduction salons simply because there is the sale of exercise equipment. While the two Denver metropolitan newspapers are members of BBB, there is nothing in the record to suggest that they acted in any way to inhibit advertising in their papers by the plaintiffs. The fact is that the advertising which was the subject of the criminal complaint was in October, 1974, much after the June panel hearing and, indeed, after the commencement of this litigation.

The present case is quite comparable with *McCann v. New York Stock Exchange*, 107 F.2d 908 (2nd Cir. 1939), an action under the antitrust laws in which the plaintiff claimed that the New York Stock Exchange and New York Better Business Bureau had conspired to drive him out of business by publishing letters and leaflets describing him as "unreliable morally and financially, with a criminal record". There Judge Learned Hand said:

> . . . To be actionable the combination or agreement must be unlawful in means, or in end; the only unlawful means possible were the utterances about the plaintiff, the truth of which the judge did leave to the jury. The end avowed—ridding the business of unscrupulous persons—was not only lawful, but commendable, and while the defendants may have had other motives, that had to be proved and could not be assumed. (page 912)

There is no proof of such other motive in this case. Indeed, in my view the Pat Walker advertising was misleading because of its failure to tell the whole truth. The discovery record supports the characterizations and conclusions made by the defendants.

The third claim for relief fails because there is no jurisdiction in this court to grant private relief under the commerce clause of the Constitution. Clause 3 of Article 1, § 8 of the United States Constitution is a limitation upon the power of the state. *Prudential Insurance Co. v. Benjamin*, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342 (1946) and *Freeman v. Hewit*, 329 U.S. 249, 67 S.Ct. 274, 91 L.Ed. 265 (1946). It does not create any implied cause of action and the defendants engaged in private activities, not state action. *Cf. Chavez v. Freshpict Foods, Inc.*, 456 F.2d 890 (10th Cir. 1972); *Skidmore v. Travelers Insurance Co.*, 356 F.Supp. 670 (E.D.La.1973), aff'd 5 Cir., 483 F.2d 67.

Upon all of the foregoing, it is concluded that the plaintiffs have no claim for relief within the jurisdiction of this court and that a summary judgment should be entered for the defendants with a dismissal of this civil action. It is, therefore,

ORDERED that the complaint, amended complaint, and this civil action are dismissed and that judgment shall enter for the defendants with their costs to be taxed.