**WASHINGTON SCIENTIFIC INDUS-TRIES, INC., a Minnesota Corporation, Plaintiff,**

v.

**POLAN INDUSTRIES, INC., a West Virginia Corporation, Defendant and Third-Party Plaintiff,**

v.

**SIDNEY ALUMINUM PRODUCTS, INC., an Ohio Corporation, and Rimer Precision Casting, Inc., an Ohio Corporation, Third-Party Defendants.**

**No. 4–67 Civ. 43.**

United States District Court
D. Minnesota,
Fourth Division.
July 10, 1969.

Lindquist & Vennum, Minneapolis, Minn., for plaintiff.

Dorsey, Marquart, Windhorst, West & Halladay, by Bernard G. Heinzen and Jan D. Sturmans, Minneapolis, Minn., for defendant and third-party plaintiff.

Henson & Webb, by Robert F. Henson, Minneapolis, Minn., for third-party defendant Sidney Aluminum Products, Inc.

Faegre & Benson, by G. Alan Cunningham, Minneapolis, Minn., for third-party defendant Rimer Precision Casting, Inc.

ORDER

MILES W. LORD, District Judge.

Sidney Aluminum Products, one of the third-party defendants in this lawsuit, seeks an order dismissing the third-party complaint on the grounds that this Court lacks personal jurisdiction over it. Although the controversy involved in this lawsuit could be more efficiently resolved in one action, this Court cannot proceed to determine what, if any, are the rights and obligations of a party unless the relevant statutory and constitutional standards for obtaining personal jurisdiction over that party are met. In this instance, the Court holds that it has no personal jurisdiction over Sidney.

This case involves a contractor and three subcontractors which are engaged in the production of tank periscopes for the United States government. The contractor is the defendant and third-party plaintiff, Polan Industries. Polan is a West Virginia corporation with its principal place of business at Huntington, West Virginia.

In 1964, Polan contracted with Sidney, an Ohio corporation, for the production of certain aluminum castings used in the periscopes. A separate agreement was made with third-party defendant Rimer Precision Casting, Inc., for the production of steel castings. (Rimer has interposed a defense of lack of personal jurisdiction in its answer to the third-party complaint, but the validity of that defense is not now before the Court.) In March or April of 1965, Polan contracted with the plaintiff, Washington Scientific, a Minnesota corporation, for machining of these castings. At that time, Polan directed Sidney to ship the aluminum castings directly to Washington Scientific. A letter dated March 26, 1965, from Sidney's vice-president to Polan's purchasing agent describes the arrangement made:

This will confirm our telephone conversation of this date. We understand we are authorized to ship castings, No. 7659443 on your P.O. #1039, to Washington Scientific of Minneapolis, Minnesota, and to bill you for the same. The castings will be shipped freight collect.

The routing will be by Central of Wisconsin, and the shipments leaving

Monday will be delivered, so they say, on Wednesday of the same week. We will mail to you a duplicate copy of our shipper for your files and subsequent verification.

I hope I have covered everything to your satisfaction.

Later in 1965, the purchase order itself was amended to provide for shipment to Washington Scientific. At all times shipment was f.o.b. Sidney, Ohio.

Sidney made at least twenty-three shipments of aluminum castings from Sidney, Ohio, to Washington Scientific in Minnesota from March, 1965, through May, 1966. The gross weight of these shipments was invoiced in excess of fifteen tons. The total billed Polan exceeded $33,000. On two occasions, in April and July of 1965, Washington Scientific returned items to Sidney. And on November 15, 1965, two Sidney representatives attended a meeting at Washington Scientific's place of business. Polan's affidavit to the effect that these representatives participated in discussions involving the subject matter of this lawsuit is not contradicted.

The present lawsuit was initiated by Washington Scientific to recover for damages resulting from an alleged breach of contract by Polan. Washington Scientific's complaint charges that Polan breached the contract by furnishing defective castings "which did not conform to the quality contemplated by the parties and agreed to in the said contract." The complaint charges that as a result of Polan's breach of contract Washington Scientific incurred substantial extra costs, specifically, "costs attributable to extreme tool wear and breakage, and frequent tool changes, machinery repairs, and adjustments." Washington Scientific also claims damages for additional expenses required because of a greatly increased time for machining, for loss of profits it would otherwise have made, and for loss of business reputation. A second count of the complaint seeks a sum of money which Polan is alleged to owe Washington Scientific for goods sold and delivered.

Polan first moved to dismiss the complaint for lack of personal jurisdiction. This motion was denied in an order dated August 18, 1967. Washington Scientific Industries, Inc. v. Polan Industries, Inc., 273 F.Supp. 344 (D.Minn.1967). Polan then filed an answer which denied any breach and counterclaimed for losses it said it incurred as a result of Washington Scientific's actions.

Polan has now served a third-party complaint against Sidney and Rimer. Polan's position is that any injury which Washington Scientific suffered is attributable to Sidney and Rimer, and that its own injuries are attributable either to Washington Scientific or to Sidney and Rimer. The third-party complaint alleges that if the castings supplied by Sidney and Rimer were defective, then Sidney and Rimer are liable for substantial and material breaches of warranties of merchantability and fitness for a particular purpose.

Sidney has no office, mailing address, telephone listing or bank account within the State of Minnesota. None of its employees reside here. Polan has not contested Sidney's statement that it does not carry on any solicitation or advertising within Minnesota. Sidney does not own, use, or process any real or personal property situated in Minnesota. In addition to the activities described above, Sidney's only contacts with Minnesota appear to be in conjunction with two unrelated accounts which were not solicited in this state. This business has continued over the last five or six years.[1]

1. The parties have submitted to the Court information about Sidney's Minnesota sales. At Sidney's request, the Court will keep these figures *in camera*. These accounts were hardly substantial. At no time did the sales to Minnesota firms exceed 1% of the annual net sales of the company. During several years the amount of these sales was less than 1⁄10 of 1% of the firm's annual net sales. The dollar amounts were not great.

Polan served Sidney in accordance with both of Minnesota's long arm statutes.[2] Pursuant to M.S.A. § 303.13, Subd. 1(3) service was made on the Secretary of State. Sidney was also served in Ohio pursuant to M.S.A. § 543.19. Sidney claims that this Court cannot exercise personal jurisdiction over it pursuant to either of these statutes, and that to do so would contravene the Due Process Clause of the Constitution.

Normally this Court, when called upon to rule on such a motion to dismiss, would first consider whether service of the complaint was authorized by either of Minnesota's long-arm statutes and then proceed to determine whether such service is consistent with the Due Process Clause of the Federal Constitution. See Fed.R.Civ.P. 4(e); Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir.1965). But in this case Polan has raised questions regarding the scope of Minnesota's long-arm statutes and the scope of Minnesota's remedy in tort for property damages on a theory either of strict liability in tort or breach of implied warranty which a federal court should not, if possible, decide in the first instance. In order to avoid decisions more properly made by state courts, and because the Court finds that exercise of personal jurisdiction over Sidney would clearly violate the Due Process Clause of the Constitution, this Court will not rule on the specific claims made by Polan regarding service under the Minnesota statutes.[3]

■ *The Due Process Issue.* It is elementary that a state may exercise its judicial jurisdiction over a party if that party has sufficient contacts or ties with the state "to make it reasonable and just, according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which * * * [the party] has incurred there." International Shoe Co. v. State of Washington, 326 U.S. 310, 320, 66 S.Ct. 154, 160, 90 L.Ed.

2. Service of process upon a third-party defendant pursuant to the long-arm statute is proper. See F.R.Civ.P. 4(e) and (f); Ehlers v. United States Heating & Cooling Mfg. Corp., 267 Minn. 56, 124 N.W.2d 824 (1963).

3. Briefly summarized, Polan claims 1) that Sidney "transacts business" in Minnesota within the meaning of Section 543.19; 2) that it has committed a tort within Minnesota (property damage to Washington Scientific) as provided in Section 543.19; 3) that it (Polan) should be considered a "resident" of Minnesota for the purposes of the contract provision of Section 303.13; and 4) that Sidney is subject to service under the tort provisions of Section 303.13. Polan's contention that Sidney has committed a tort against a Minnesota resident, Washington Scientific, must be considered in light of Polan's allegation in the third-party complaint that Washington Scientific's damages are the result of Sidney's "substantial and material breaches of warranties of merchantability and fitness for the particular purposes for which they were supplied * * *." Whether such an allegation states a claim in tort is uncertain. It is quite possible that the Minnesota Supreme Court would not extend the doctrine of strict liability in tort adopted in McCormack v. Hankscraft Co., 278 Minn. 322, 154 N.W.2d 488 (1967), to cover the case in which a deviation from contract specifications caused extreme tool wear and breakage. And the scope of a tort action for breach of implied warranties discussed at length in Beck v. Spindler, 256 Minn. 543, 99 N.W.2d 670 (1959), may not be the same after the *Hankscraft* decision.

If this Court were to find that service of the complaint was authorized by Section 543.19, it would be necessary to decide whether such service involved an impermissible retroactive application of the statute. On the basis of two federal court decisions, the anomaly arises that Washington Scientific would not have been permitted to serve Sidney under Section 543.19, see Majerus v. Walk, 275 F.Supp. 952 (D.Minn.1967), but Polan could serve its third-party complaint for indemnity under that section, see Dixon v. Northwestern National Bank, 275 F. Supp. 582 (D.Minn.1967). This issue is presently before the Minnesota Supreme Court in Hunt v. Nevada State Bank (No. 41857).

Rather than speculate on what Minnesota law will be on these matters, this Court will turn directly to the constitutional issue.

95 (1945). In this case, Sidney's ties or contacts with Minnesota are not sufficient to meet that test. Of course, a large quantity of Sidney's goods were shipped into Minnesota at regular intervals over a period of more than a year. Such contacts in themselves might be of greater importance if Sidney were being sued by a Minnesota resident who could not, without great inconvenience, bring an action in another forum against Sidney for injuries arising out of those shipments or received from the goods. These shipments hardly serve to tie Sidney with Minnesota with respect to this action for indemnity based upon a contract between Sidney and Polan. Properly viewed, the shipments were made by Polan, not Sidney. Sidney agreed to direct the common carrier to bring the castings to Minnesota. But it did so at Polan's request, not on its own initiative. And the goods became Polan's at the time they were delivered to a common carrier. Uniform Commercial Code § 2–401. (The Code was in effect both in West Virginia and Ohio at the time Sidney agreed to manufacture the castings.) Sidney billed Polan in West Virginia for the castings produced. Payments for them were not made in Minnesota or from Minnesota. Polan could have chosen a firm in any one of forty-nine other states to machine these castings and it would not, presumably, have altered the terms of its contract with Sidney. It was Polan, not Sidney, which had contacts with Minnesota by shipping these goods to Washington Scientific. On the basis of these shipments the Court cannot hold Sidney subject to suit in Minnesota.[4]

The other contact with Minnesota which is directly involved in this controversy is a visit to Minnesota by Sidney officials during which they discussed the events involved in this lawsuit with officials of Polan, Washington Scientific, and the United States government. Polan does not claim that this meeting led to any changes in Sidney's production or any alteration in its agreement with Polan. Nor does Polan state that these Sidney officials engaged in any service activities at Washington Scientific's plant. From what the Court can determine, the meeting involved a discussion of problems faced by Washington Scientific in machining the castings. Presumably, Sidney participated by describing what they were doing in an attempt to determine what, if anything, they were doing wrong.

The Court is not willing to rule that this meeting, by itself or in conjunction with the shipment of its goods to Minnesota, is a basis for this state to exercise jurisdiction over Sidney. This was not a meeting at which Sidney officials attempted to negotiate a contract to be performed in Minnesota or otherwise sought to promote its own business. Rather, it appears to be a meeting between the representatives of the parties which had an interest in the proper production of these periscopes. It could as well have been held in West Virginia, Ohio, or some other state. In the opinion of this Court, it is contrary to our "traditional conception of fair play and substantial justice" to hold Sidney subject to the jurisdiction of Minnesota courts merely because it participated in a meeting in Minnesota which was designed to work out problems which had arisen in a matter which otherwise would not have subjected Sidney to that jurisdiction.

The final contacts which Polan has with Minnesota are the sales made to two Minnesota firms during the years from

---

4. Polan cites various Minnesota cases which uphold jurisdiction over foreign corporations when the shipment terms were f. o. b. non-Minnesota locations. But in all of those cases the plaintiff was a Minnesota purchaser who received the shipment, not, as here, a West Virginia corporation which itself arranged for further processing of the goods in Minnesota. See Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir. 1965); Kornfuehrer v. Philadelphia Bindery, Inc., 240 F.Supp. 157 (D.Minn.1965); Electro-Craft Corp. v. Maxwell Electronics Corp., No. 4–67 Civ. 344 (D.Minn. 1968).

1963 to 1968. Sidney's claim that it did not solicit this business in Minnesota is not disputed. The Court has already noted that these sales did not constitute a major, or even a significant, part of Sidney's business. While it may be true that this Court could exercise jurisdiction over Sidney in an action brought by either of these Minnesota firms, it does not follow that Sidney is subject to personal jurisdiction of this Court in an action not related to those contacts. The question raised by this motion is whether Sidney is required to defend this particular suit in this forum. See International Shoe Co. v. State of Washington, 326 U.S. 310, 317, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Supreme Court has ruled that a state may exercise personal jurisdiction over a foreign corporation as to a cause of action unrelated to any of the activities of that corporation in the state when the other activities are substantial and continuing. Perkins v. Benquet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952). However, Sidney's other contacts with Minnesota are significantly different from the continuous activities of the Benquet Mining Company in Ohio. See 342 U.S. at 447–448, 72 S.Ct. 413. In this case, the sales made to these Minnesota firms are at best a minimal contact with this state and are totally unrelated to Polan's cause of action. They do not provide a basis for the exercise of personal jurisdiction in this case. See Aftanase v. Economy Baler Co., 343 F.2d 187, 197 (8th Cir. 1965).

There are other issues to be considered in ruling on the due process issue. The Supreme Court, in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), held that it was essential to the exercise of personal jurisdiction that there be some act by which a party "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. at 1240. With respect to the transaction involved in this case, Sidney has not, in any significant way, invoked the benefit and protection of Minnesota laws. Polan claims that Sidney, despite the f.o.b. shipment terms, had a legal right "under the U.C.C. and corresponding sections of Minnesota law to stop its castings in transit." The U.C.C. does provide the seller, in this case Sidney, the right to stop shipment under certain defined circumstances. See U.C.C. § 2–705. However, if Sidney were to exercise that right it would not be invoking Minnesota law, but rather West Virginia or Ohio law, pursuant to which they contracted. As a practical matter, Sidney would not need to enter a Minnesota forum to effect the stoppage, for the carrier cannot be expected to refuse Sidney's legitimate request. Hypothetically, Sidney might have to seek a Minnesota court order to obtain possession of these goods, but such speculative protection from Minnesota law is not the invocation of this state's law which was contemplated by the Supreme Court in Hanson.

Sidney also benefits from its other two accounts—both economically and by invoking the protection of Minnesota law. But those transactions are not related to this lawsuit, and, as pointed out above, the Court is not going to consider them determinative in this matter.

Other factors involved in ruling on the due process issue are the interest of the forum state in protecting its plaintiffs and the relative inconvenience to the parties. See Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir.1965). This is not a case like McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), in which Minnesota would have an interest in providing a forum for its own plaintiffs. Washington Scientific, the only Minnesota corporation involved, obtains full recovery in this action if it proves its case. Whether or not Polan recovers over from Sidney is of no concern to the Minnesota plaintiff, Washington Scientific. Minnesota has no significant interest in this action, for a non-resident, Polan, seeks to sue in this forum when it

could sue Sidney either in Ohio or, presumably, in West Virginia.

Although in this day of rapid and relatively inexpensive air travel, the factor of inconvenience is not often dispositive of this issue, in this case in which Sidney has so few contacts with Minnesota, the factor of inconvenience weighs against asserting jurisdiction.

Therefore, it is ordered

That the third-party action of Polan Industries, Incorporated, as against third-party defendant Sidney Aluminum Products, Incorporated is dismissed for lack of jurisdiction over the person pursuant to Rule 12(b) (2) of the Federal Rules of Civil Procedure.