Robert COLLYARD, Plaintiff,

v.

The WASHINGTON CAPITALS, the National Hockey League, Griffin Bell, Attorney General of the United States of America, Cyrus Vance, as Secretary of the State of the United States of America, and F. Ray Marshall, as Secretary of Labor of the United States of America, Defendants.

Warren WILLIAMS, Plaintiff,

v.

The BOSTON BRUINS, the Cleveland Barons, the Colorado Rockies, the Detroit Redwings, the National Hockey League, the New York Rangers, the St. Louis Blues, and the Washington Capitals, Defendants.

Nos. Civ. 5–79–30, Civ. 5–78–56.

United States District Court,
D. Minnesota,
Fifth Division.

Oct. 11, 1979.

Falsani & Balmer by James W. Balmer, Duluth, Minn., for plaintiffs Collyard and Williams.

Maslon, Kaplan, Edelman, Borman, Brand & McNulty, by Irving R. Brand and William Z. Pentelovitch, Minneapolis, Minn., for hockey defendants.

Robert W. Rasch, St. Louis, Mo., for St. Louis Blues.

Thorwald H. Anderson, Jr., U. S. Atty. by Mary L. Egan, Asst. U. S. Atty., Minneapolis, Minn., for federal defendants.

## MEMORANDUM OPINION AND ORDER

MILES W. LORD, District Judge.

### I. Procedural Posture

Plaintiff, Robert Collyard, commenced an action in United States District Court against Defendants, The Washington Capitals; The National Hockey League; Griffin Bell, as Attorney General of the United States of America; Cyrus Vance, as Secretary of the State of the United States of America; and F. Ray Marshall, as Secretary of Labor of the United States of America.

Plaintiff, Warren Williams, commenced an action in United States District Court against defendants, The Boston Bruins, The Cleveland Barons, The Colorado Rockies, The Detroit Redwings, The National Hockey League, The New York Rangers, The St. Louis Blues, and The Washington Capitals.

Plaintiffs have moved for this Court to issue an Order allowing amendments to both parties' complaints. Collyard's amendment would add the Minnesota Northstars as Defendants and clarify its jurisdictional bases. Williams' amendment would add the Chicago Blackhawks, the Minnesota Northstars and the federal Defendants named in Collyard's initial complaint. Williams' amended complaint would also add one additional legal theory of liability against the named hockey teams for violation of the United States Immigration and Nationality Act, 8 U.S.C. § 1101 (1976).

Meanwhile, all named Defendants have opposed Plaintiffs' motion to amend and have moved for this Court to dismiss Plaintiffs' claims with prejudice for failure to state a claim upon which relief may be granted; for lack of subject matter jurisdiction; and, for lack of jurisdiction over the defendants' persons.

This Court denies Plaintiffs' motions to amend and grants Defendants' motions to dismiss. Plaintiffs' complaints are in all things dismissed.

### II. Facts and Theories of Liability

Robert Collyard and Warren Williams have either directly or indirectly contacted various hockey teams for the purpose of securing employment as paid professional hockey players in the National Hockey League (NHL). As of the time of the hearing on this matter, Plaintiffs' request for tryouts with the hockey teams named as Defendants have either been expressly denied or left without response. Therefore, Plaintiffs have been denied employment opportunities with the named Defendants.

Plaintiffs first contend that this denial of employment constitutes a violation of the Minnesota Human Rights Act, Minn.Stat. § 363. The crux of Plaintiffs' argument rests upon their allegation that they have been denied employment on account of their national origin. They contend that the Defendant hockey teams are composed predominantly of Canadian-born hockey players. Plaintiffs further urge that the Defendant hockey teams have employed these Canadian-born players notwithstanding the fact that there are many qualified Americans who could play hockey as well as—if not better than—some inferior Canadians. Plaintiffs therefore allege, in conclusion, that they have been discriminated against by reason of their national origin.

Secondly, Plaintiffs urge that Defendant hockey teams are in violation of the Immigration and Nationality Act by reason of employing inferior aliens where superior Americans seek identical employment. Messrs. Williams and Collyard reason that the Act creates a private cause of action upon which they may ground a legal theory of liability against these employers.

Finally, Mr. Collyard alleges that the Attorney General of the United States, the Secretary of State and the Secretary of Labor of the United States have permitted the entry into the United States of these paid professional alien hockey players in violation of the Immigration and Nationality Act. As a result of such violation, plaintiffs allege that they have been injured monetarily.

### III. *Discussion*

#### A. THE AMENDED COMPLAINT

 Generally, a party is allowed to amend its complaint with few restrictions under Federal Rule of Civil Procedure 15(a). However, the Court will not freely allow an amendment under Rule 15(a) if the amended pleading could be defeated by a motion for summary judgment or a motion to dismiss. *Eria v. Texas Eastern Transmission Corp.*, 377 F.Supp. 344, 345 (E.D.New York 1974); *Bernstein v. National Liberty Int'l Corp.*, 407 F.Supp. 709, 714–15 (E.D.Pa. 1976). Likewise, if the amended pleading could in no way cure its present deficiencies, then leave to amend will not be granted. *See, Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also, Norbeck v. Davenport Community School Dist.*, 545 F.2d 63, 70 (8th Cir. 1976).[1] To avoid a futile act, Plaintiffs' proposed amendments must be measured in terms of their ability to withstand the motions to dismiss filed by all named Defendants. Plaintiffs fail to clear this hurdle; Collyard's amended pleading adding a claim against the Minnesota Northstars based upon the Immigration and Nationality Act

fails to state a claim upon which relief may be granted. Williams' amended complaint adding the Minnesota Northstars and also adding a claim based upon the Immigration and Nationality Act as against all named Defendant hockey teams fails to state a claim for relief. Likewise, Williams' amended pleading adding a claim identical to Collyard's claim against the federal Defendants fails to state a claim for relief. Williams' amended claim against the Chicago Blackhawks also fails to withstand defendants' motion to dismiss; this Court does not have personal jurisdiction over this nonresident.

#### B. THE HOCKEY TEAMS

All named Defendant hockey teams were served with process outside the state of Minnesota. Rule 4(e) of the Federal Rules of Civil Procedure permits service outside the state under the circumstances and in the manner prescribed by Minn.Stat. § 543.-19. That section provides:

Subdivision 1. As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any nonresident individual, or his personal representative, in the same manner as if it were a domestic corporation or he were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or nonresident individual:

(a) Owns, uses, or possesses any real or personal property situated in this state, or

(b) Transacts any business within the state, or

(c) Commits any act in Minnesota causing injury or property damage, or

(d) Commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when jurisdiction shall be found:

---

**1.** The Eighth Circuit in *Norbeck* ruled that it was not an abuse of discretion to deny a party the right to amend where the allegations contained in the amended complaint did not remedy the deficiencies present in the original complaint. 545 F.2d at 70.

(1) Minnesota has no substantial interest in providing a forum; or

(2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice; or

(3) the cause of action lies in defamation or privacy.

. . . . .

Subd. 3. Only causes of action arising from acts enumerated in Subdivision 1 may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

*Id.*

The Minnesota Supreme Court has ruled that § 543.19 extends the jurisdiction of the Minnesota courts over nonresidents to the fullest limits constitutionally permitted. *Marquette Nat'l. Bank v. Norris*, 270 N.W.2d 290, 294–95 (Minn.1978).[2] The federal courts exercising its jurisdiction pursuant to this section have followed the mandate of the Minnesota Supreme Court. *See, Toro Co. v. Ballas Liquidating Co.*, 572 F.2d 1267, 1269 (8th Cir. 1978); *B&J Mfg. Co. v. Solar Industries, Inc.*, 483 F.2d 594, 598 (8th Cir. 1973).

Notwithstanding this fact, it is clear that in order for this Court to entertain jurisdiction over the Defendant hockey teams pursuant to § 543.19, Plaintiffs must "prove not only that personal jurisdiction is authorized by the terms of § 543.19 in the particular instance but also that minimum contacts exist rendering the exercise of such jurisdiction consistent with due process."

*All Lease Co. v. Betts*, 294 Minn. 473, 474, 199 N.W.2d 821, 822 (1972). *See also, McQuay, Inc. v. Samuel Schlosberg, Inc.*, 321 F.Supp. 902, 904 (D.Minn.1971); *Washington Scientific Industries, Inc. v. Polan Industries, Inc.*, 302 F.Supp. 1354, 1357–59 (D.Minn.1969). Plaintiffs have failed to meet this burden.

Minn.Stat. § 543.19(3) requires that the party using this section must demonstrate that the actions of the defendants giving rise to the Plaintiffs' claim arise from an act enumerated in the statute. Chief Judge Devitt, in *Tunnell v. Doelger & Kirsten, Inc.*, 405 F.Supp. 1338 (D.Minn.1976) has articulated the prerequisite in this manner:

[P]laintiff's argument ignores the expressed statutory requirement of a nexus between the cause of action asserted and the acts of a nonresident which can confer jurisdiction under the Statute. Subdivision 1 of the Statute refers to "a cause of action *arising from* any acts enumerated in this subdivision . . ." M.S.A. § 543.19, Subd. 1 (Emphasis added). Subdivision 3 states that "[o]nly causes of action *arising from* acts enumerated in subdivision 1 may be asserted against a defendant in an action in which jurisdiction over him is based upon this section." M.S.A. § 543.19, Subd. 3 (Emphasis added).

405 F.Supp. at 1340.

Plaintiffs have failed to show that the Defendants' contacts with the state of Minnesota are those acts giving rise to its cause of action.[3] Further, Plaintiffs have

---

**2.** The Minnesota Supreme Court, in *Norris* stated:

The controlling issue is thus whether upon the particular facts of this case the nonresident appellants' contacts with this state are sufficient to justify assumption of personal jurisdiction over them in the courts of this state under the constitutional standards of due process of law articulated and applied by the United States Supreme Court.

270 N.W.2d at 294–95.

**3.** The Defendants' only contacts with Minnesota constitute occasional scouting trips and hockey games. There is no claim or evidence in the record that Plaintiffs were scouted by any of the Defendants in Minnesota. Thus,

there have been no actions by Defendants in Minnesota upon which jurisdiction over them can be based.

With regard to the games played by Defendants in Minnesota, the hockey teams of the National Hockey League which travel to Minnesota to play against the Minnesota Northstars in the Metropolitan Sports Center do not receive any portion or percentage of the ticket sales or concession sales from the games they play, nor do they receive any fee, reimbursement, or remuneration for playing in Minnesota. Similarly, none of the teams which travel to Minnesota receives any reimbursement or compensation for their travel expenses or their

failed to show that the Defendants' contacts within and without the state are constitutionally sufficient to warrant the use of the Minnesota long arm statute;[4] accordingly, Plaintiffs' claims against the Defendant hockey teams are dismissed for lack of personal jurisdiction.

## C. THE FEDERAL DEFENDANTS

Collyard's original pleading named several federal officers as Defendants in the case at bar. Plaintiff's claim is based upon the Immigration and Nationality Act; he asserts that the federal Defendants have damaged him in permitting alien professional hockey players, particularly Canadians, to enter the United States and be employed as hockey players on NHL teams in violation of the Act. This claim against the federal Defendants is, in all things, dismissed for failure to state a claim upon which relief may be granted.

Williams has moved this Court to amend its complaint in order to add a claim identical to Collyard's claim against the federal officers. The motion to amend is denied.

### 1. Cyrus Vance

■ Collyard's claim against Cyrus Vance is dismissed for failure to state a claim upon which relief may be granted. Primary responsibility for the administra-tion and enforcement of the Act is vested in the Attorney General. In particular, the question of importing H–1 and H–2 aliens is committed by statute to the Attorney General, who is required to consult with the Department of Labor as to the entry of aliens. The Secretary of State is in no way involved in this determination. His responsibilities under the Act are set forth in 8 U.S.C. § 1104 (1976), and he is specifically exempted from responsibility relating to the granting or refusal of Visas.[5]

In view of the foregoing, it is determined that there is no action on the part of the Secretary of State which is reviewable, and the complaint against him is, in all things, dismissed for failure to state a claim upon which relief may be granted.

### 2. Plaintiff's Claim for Injunctive Relief

Plaintiff Collyard seeks injunctive relief against the government.[6] Collyard's claim alleges that the federal officers charged with the enforcement of the Immigration and Nationality Act have failed to carry out their duties within the confines of the statute. Plaintiff reasons that the federal defendants have violated §§ 1101(a)(15) and 1182(a)(14) of the Act in allowing Canadian Nationals to enter the United States and work for NHL teams while equally qualified American citizens are denied employment with these same teams.

out-of-pocket expenses. See Affidavit of Walter L. Bush, Jr. (Aug. 11, 1979).

The Boston Bruins played two games in Minnesota during the 1977–1978 season and four games in Minnesota during the 1978–1979 season. The Cleveland Barons played two games in Minnesota during the 1977–1978 season and played no games in Minnesota thereafter. The Colorado Rockies played three games in Minnesota during the 1977–1978 season and three games in Minnesota during the 1978–1979 season. The Detroit Redwings played two games in Minnesota in the 1977–1978 season and two games in Minnesota in the 1978–1979 season. The New York Rangers played three games in Minnesota in the 1977–1978 season and two games in Minnesota in the 1978–1979 season. The St. Louis Blues played three games in Minnesota in the 1977–1978 season and two games in Minnesota in the 1978–1979 season. The Washington Capitals played two games in Minnesota in the 1977–1978 season and two games in Minnesota in the 1978–1979 season. See Affidavit of Walter L. Bush, Jr. (Aug. 11, 1979).

4. For a discussion of sufficient contacts within the state see this Court's Order in *Washington Scientific Industries, Inc. v. Polan Industries, Inc.*, 302 F.Supp. 1354, 1357–60 (D.Minn.1969). Defendants' contacts outside the state did not cause tortious injury within the state, nor was it established that defendants' conduct was sufficiently "purposeful" to warrant the use of the Minnesota long arm statute. See, *Kulko v. Superior Ct.*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). See also, Note, 12 *Creighton L.Rev.* 905, 918–31 (1979).

5. In regard to the granting or refusal of Visas, it is interesting to note that Canadian nationals are specifically exempt from the Visa requirements of the Act. 22 C.F.R. § 41.6(a) (1979).

6. Collyard's original complaint sought money damages against the United States. However, Plaintiff, in open court, moved to dismiss the claim for money damages against the government.

Collyard, however, does not seek review of agency action under the Administrative Procedure Act, 5 U.S.C. § 702 (1976).[7] The claim, in effect requests nonstatutory review of agency action under the general federal question statute, 28 U.S.C. § 1331 (1976).[8] This necessitates an inquiry into two wholly separate issues: first, is sovereign immunity a bar to Plaintiff's requested relief? Second, if sovereign immunity is not a bar, then has Collyard stated a claim for which relief may be granted?

### A) *Sovereign Immunity*

If this Court were to review the actions of the federal defendants under the Administrative Procedure Act, 5 U.S.C. § 702 (1976), the issue of sovereign immunity would not arise. The 1976 amendment to § 702 constitutes a blanket waiver of sovereign immunity as to a broad category of actions against the government, and by its terms would apply here, where Plaintiff seeks non-monetary relief. *See Hill v.*

*United States,* 571 F.2d 1098, 1102 (9th Cir. 1978).

Since, however, Plaintiff does not seek review under § 702 of the APA, but rather seeks review under 28 U.S.C. § 1331, it is not clear whether sovereign immunity constitutes a bar to this action.

In a nutshell, the issue can be stated in this matter: Did the 1976 amendment to § 702 effectively eliminate sovereign immunity as a bar to certain equitable actions brought under 28 U.S.C. § 1331?

There is a split in the Circuit Courts on this question. The Second Circuit, in *Estate of Watson v. Blumenthal,* 586 F.2d 925 (2d Cir. 1978), has ruled that the amendment to § 702 does not remove the defense of sovereign immunity in actions under § 1331. *Id.* at 932.[9] The Third Circuit Court of Appeals, in *Jaffee v. United States,* 592 F.2d 712 (3d Cir. 1979), has ruled that § 702 does, in fact, waive sovereign immunity in nonstatutory review of agency action under § 1331.[10]

---

**7.** Section 702 is the mechanism in the Administrative Procedure Act providing generally for judicial review of any agency action causing injury to any person. In 1976, this section of the Act was amended in an effort to allow more flexibility in suits against agencies of the federal government. The amendment eliminated sovereign immunity as a bar to actions requesting *injunctive relief* against the United States. Section 702 provides:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. *An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.* The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided,* That any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or

equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.
5 U.S.C. § 702 (1976) (Emphasis added).

**8.** The Third Circuit has stated that the type of suit before this Court is "called 'nonstatutory' because [it is] not brought under the statutes that specifically provide for review of agency action. See H.R.Rep. No. 94–1656, 94th Cong., 2d Sess. 5, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 6121, 6125. 'In these instances, judicial review is available, if at all, through actions involving matters which arise "under the Constitution, Laws, or treaties of the United States." As provided in § 1331(a) of title 28.'" *Jaffee v. United States,* 592 F.2d 712, 718 n. 12 (1979).

**9.** The Second Circuit stated:
We also note what the amendments did not do: they did not remove the defense of sovereign immunity in actions under § 1331. Not only does the language of the amendment to § 1331 fail to suggest any effect on sovereign immunity, but the House Report states the effect of the amendments on sovereign immunity in terms of § 702 . . . .
586 F.2d at 932.

**10.** The Third Circuit, in *Jaffee* reasoned that:
As the House Report shows, Congress amended section 702 with a specific purpose

■ This Court is swayed by the reasoning of the Third Circuit Court of Appeals in *Jaffee, supra.*

■ However, even though Congress may have waived the government's sovereign immunity, it has failed to create a substantive right in the Plaintiff under the Immigration and Nationality Act upon which a claim for injunctive relief may be based. *See, Hill v. United States,* 571 F.2d 1098, 1102–03 (9th Cir. 1978), *discussing*

> of waiving sovereign immunity in equitable actions brought under section 1331. The Report notes that acts of the older executive departments, such as the Department of Defense, are subject to judicial review only through "nonstatutory" suits under section 1331. Having reviewed the injustices of sovereign immunity in these nonstatutory actions, the Report concludes "that the partial elimination of sovereign immunity, as a barrier to *nonstatutory* review of federal administrative action" would not unduly interfere with federal agencies. By waiving sovereign immunity in suits for "relief other than money damages," the Congress sought to "facilitate nonstatutory judicial review of Federal administrative action . . . ." It was therefore precisely for equitable actions under section 1331 that Congress enacted the amendments to section 702. . . ."
>
> 592 F.2d at 718–19. (Citations omitted).

11. The Ninth Circuit in *Hill* stated: "As we read *Testan,* the plaintiffs there were denied relief for two reasons: not only had Congress failed to waive sovereign immunity as to their cause of action, but Congress had also failed to create a substantive right upon which their claim for relief could be based. Both of these hurdles must be cleared before a claim against the government can succeed." 571 F.2d at 1102–03. The court, in *Hill,* further reasoned:

> The Court in *Testan* combined these two concepts, interpreting Congress' failure to grant the substantive right as synonymous with a refusal to waive sovereign immunity. In many suits against the government, of course, sovereign immunity and failure to state a claim upon which relief can be granted are not identical. For example, with respect to *certain intentional torts committed* by agents of the government, sovereign immunity bars a cause of action that otherwise states a claim upon which relief can be granted. *See* 28 U.S.C. § 2680(h). Similarly, Congress can waive sovereign immunity as to a category of actions without also granting the substantive right upon which such actions are based. This appears to be the precise import of the amendment to 5 U.S.C. § 702,

*United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).[11]

**B)** *Failure to State a Claim for Which Relief May Be Granted*

Collyard's original pleading asserted a claim against the federal Defendants based upon the Immigration and Nationality Act, 8 U.S.C. § 1101 (1976). Plaintiff specifically alleged that the federal Defendants violated § 1101(a)(15)(H)(i) and (ii) and § 1182(a)(14) of the Act.[12]

> which simply waives sovereign immunity as to all non-monetary claims against government agencies, officers, or employees covered by the Administrative Procedure Act, but does not purport to grant any substantive rights.
>
> *Id.* at 1102, n. 7.

12. The text of the applicable statutes provides:
> § 1101(a)(15)(H):
> "(15) The term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens—
> (H) an alien having a residence in a foreign country which he has no intention of abandoning (i) who is of distinguished merit and ability and who is coming temporarily to the United States to perform services of an exceptional nature requiring such merit and ability, and who, in the case of a graduate of a medical school coming to the United States to perform services as a member of the medical profession, is coming pursuant to an invitation from a public or nonprofit private educational or research institution or agency in the United States to teach or conduct research, or both, at or for such institution or agency; or (ii) who is coming temporarily to the United States to perform temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country, but this clause shall not apply to graduates of medical schools coming to the United States to perform services as members of the medical profession;"
> § 1182(a)(14);
> "(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States * * *.
> (14) Aliens seeking to enter the United States, for the purpose of performing skilled or unskilled labor, unless the Secretary of Labor has determined and certified to the Secretary of State and the Attorney General that (A) there are not sufficient workers who are able, willing, qualified, . . . and available at the time of application for a visa

In order for Plaintiff to secure relief under the Act, this Court, in the face of three Circuit Courts of Appeal holding contrariwise, must find that the Immigration and Nationality Act creates a private right of action. The Act does not create a private right of action; Plaintiff's claim based thereupon does not state a claim upon which relief can be granted.

The Ninth Circuit Court of Appeals, in *Lopez v. Arrowhead Ranches*, 523 F.2d 924 (9th Cir. 1975) reasoned that the Immigration and Nationality Act did not create a private right of action. Plaintiffs in that case, citizens and legally admitted alien farm workers, sought relief under § 1324 of the Act.[13] The Ninth Circuit stated:

> 8 U.S.C. § 1324, the section of the Immigration and Nationality Act upon which plaintiffs particularly rely, in our view, is solely a penal provision and creates no private right of action. We note that the Tenth Circuit has reached this conclusion in *Chavez v. Freshpict Foods, Inc.*, 456 F.2d 890 (10th Cir. 1972), cert. denied, 409 U.S. 1042, 93 S.Ct. 535, 34 L.Ed.2d 492 (1973), and the rationale appearing in that opinion is the same as that which impels us to so hold.

523 F.2d at 926.

The Tenth Circuit Court of Appeals, in *Chavez v. Freshpict Foods, Inc.*[14], 456 F.2d 890 (10th Cir. 1972), has ruled on the precise issue raised by the case at bar. Collyard in the instant case urges that sections 1101(a)(15)(H) and 1182(a)(14) create a private right of action. The Tenth Circuit has ruled that these sections do not, in fact, create a private right of action. The Court in *Freshpict Foods* stated:

> 8 U.S.C.A. § 1101(a)(15)(H)(ii) is part of a definitional section which defines nonimmigrant aliens; it cannot be construed so as to create private rights. 8 U.S.C.A. § 1182(a)(14) contemplates administrative action by the Secretary of Labor. Nothing therein expresses a grant of private cause of action based upon its violation. Id. at 893.[15]

Plaintiff Collyard has argued that *Arrowhead Ranches* and *Freshpict Foods, supra,* were wrongly decided; it urges this Court to "imply" a private right of action under the Act on the basis of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975) and *Cannon v. University of Chicago,* —— U.S. ——, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

In *Cort v. Ash, supra,* the Supreme Court formulated a four-factor test for determining whether a private remedy is implicit in a statute. The Court reasoned that these several factors are relevant:

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33, 39 [, 36 S.Ct. 482, 60 L.Ed. 874] (1916) (emphasis supplied)—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, ex-

---

and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and (B) the employment of such aliens will not adversely affect the wages and working conditions of the workers in the United States similarly employed. The exclusion of aliens under this paragraph shall apply to preference immigrant aliens described in section 1153(a)(3) and (6) of this title, and to nonpreference immigrant aliens described in section 1153(a)(8) of this title;"

**13.** The gravamen of Plaintiffs' complaint concerned the Defendants' illegal hiring of farm workers in the United States. Plaintiffs alleged that the Defendants had agreed with the illegals to hire, and did hire them, knowing of their illegal entry; that as a result the Plaintiffs were displaced from jobs, unable to secure work, forced to work at reduced wages and subjected to substandard working conditions. *Lopez v. Arrowhead Ranches*, 523 F.2d 924, 926 (9th Cir. 1975).

**14.** *Freshpict Foods* involved sixteen domestic workers from Colorado and Texas, all of whom filed suit on behalf of themselves and others similarly situated. Plaintiffs therein alleged that their employers hired Mexican nationals who had illegally entered the United States; that as a result thereof plaintiffs suffered pecuniary harm. Plaintiffs sought, and were denied, relief under the Act. *See also Chavez v. Freshpict Foods, Inc.*, 322 F.Supp. 146, 147–48 (D.Colo.1971); *Flores v. George Braun Packing Co.*, 482 F.2d 279, 280 (5th Cir. 1973).

**15.** *See also* note 17, *infra*.

plicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? (citations omitted)[16]

422 U.S. at 78, 95 S.Ct. at 2088.

The Court, as recent as last May, reaffirmed the *Cort* analysis. In *Cannon v. University of Chicago*, the Supreme Court amplified the appropriate analysis within the four-factor test. The Court stated:

First, the threshold question under *Cort* is whether the statute was enacted for the benefit of a special class of which the Plaintiff is a member. That question is answered by looking to the language of the statute itself.

99 S.Ct. at 1953.

The language of the Act does not single out a class of persons upon whom special benefits are heaped or protection is provid-ed. Rather, the Act's primary purpose is to assure that the immigration and naturalization of aliens is carried out in orderly fashion under the administration of certain delegated and entrusted federal officials, departments and agencies. *Chavez v. Freshpict Foods, Inc.*, 322 F.Supp. 146, 148 (D.Colo.1971), *aff'd* 456 F.2d 890 (10th Cir. 1972).[17] The Act is merely a regulatory statute administering the immigration and naturalization of aliens. The Act does not regulate the direct relationship between domestic workers and employers. The Act does not create a special class of persons within the United States who are to be benefited by the controls on immigration. The primary concern of the Act is to regulate the immigration and naturalization of aliens.

Second, the *Cort* test requires an inquiry into the legislative history of the Act. There is no clear indication in the Act or the legislative history of the Act that Congress intended to create a private cause of action. The Act evidences, rather, a narrow intention to draft a statute which would merely regulate the immigration and naturalization process.[18]

---

**16.** In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court held that a private right of action was not created under the Federal Election Campaign Act, 18 U.S.C. § 610 (1976). The statute in *Cort* concerned a criminal provision prohibiting corporations from making certain limited contributions or expenditures. 422 U.S. at 68, 95 S.Ct. 2080.

**17.** District Court Judge Chilson, in *Freshpict Foods* reasoned that the Act:

is a comprehensive and detailed Congressional Act regulating immigration and naturalization.

The administration and enforcement of Chapter 12 is specifically delegated and entrusted to certain federal officials, federal departments, and federal agencies.

Section 1103(a) of Chapter 12 provides in pertinent part:

"The Attorney General shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers . . . ."

To enable these officials to carry out this Congressional mandate, Congress has provided the Attorney General with the Immigration and Naturalization Service of the Department of Justice, and has authorized the establishment of a Bureau of Security and Consular Affairs under the jurisdiction of the Secretary of State, which includes the Passport Office, the Visa Office, and "such other offices as the Secretary of State may deem to be appropriate". (Section 1104).

Section 1182, referred to in plaintiffs' complaint, establishes thirty-one classes of aliens who are to be excluded from admission, of which that described in subsection (14) is only one. Section 1182 is a Congressional directive to the federal officials and agencies charged with the administration and enforcement of the Act to exclude those aliens described therein. There is nothing in Section 1182 or in the balance of Chapter 12 which establishes, or creates or implies the establishment or creation of any private rights of enforcement or any private rights of action. 322 F.Supp. at 148.

**18.** *See* note 17 *supra. See also* H.R.Rep. No. 1365, 82d Cong., 2d Sess., accompanying H.R. No. 5678 *reprinted in* [1952] U.S.Code Cong. & Admin.News, pp. 1653, 1677–78.

Plaintiff argued that if the legislative history and the Act are silent as to whether a private right of action is created by the Act, then this factor should not be applied under the *Cort* test. Plaintiff then urged that nothing in the Act or its legislative history denied the private right of action. *Cort*'s second factor, however, is relevant to the present inquiry and must be considered along with the other three factors.[19]

In *Cannon, supra,* the Court stated:

*Third,* under *Cort,* a private remedy should not be implied if it would frustrate the underlying purpose of the legislative scheme. On the other hand, when that remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute.

99 S.Ct. at 1961.

The Supreme Court has indicated that it might be appropriate to imply a private right of action under a federal statute where such would be necessary or helpful to the accomplishment of its statutory purpose. However, the primary purpose underlying the Immigration and Nationality Act is to regulate the immigration and naturalization process; to rule in favor of the plaintiffs and imply a private remedy under this Act would neither be necessary nor helpful to the accomplishment of that purpose.

The fourth factor requires inquiry into. "whether implying a federal remedy is inappropriate because the subject matter involves an area basically of concern to the States." *Cannon,* 99 S.Ct. at 1963. In the case at bar, it would seem more appropriate to relegate Plaintiff to any state law claims he may have suffered. Plaintiff may have state law remedies available to redress any tortious injury or discrimination he may have suffered. Collyard may have appropriate state law remedies under the Human Rights Acts of the various states for damages for refusal to hire him.

Under the four-factor *Cort* test, and its amplification in *Cannon, supra,* there is no justification for, and no reason to imply a federal private right of action in favor of plaintiff under the Immigration and Nationality Act. Plaintiff, therefore, has failed to state a claim upon which relief may be granted. Plaintiff Williams' motion to amend his complaint to add the federal claim is denied. Collyard's claim against the Federal Defendants is in all things dismissed.

IT IS SO ORDERED.

---

**19.** In *Cannon,* the Court stated that "in situations such as the present one 'in which it is *clear* that federal law has granted a class of persons certain rights, it is not necessary to show an intention to *create* a private cause of action . . . .'" (emphasis supplied). 99 S.Ct. at 1956. However, in the instant case, it is not clear that federal law has granted any rights to a certain class of persons.